No. 64,274

STATE OF KANSAS, *Appellee*, v. DOUGLAS A. SUTHERLAND, *Appellant.*

(804 P.2d 970)

 Opinion filed January 18, 1991. 

*Steven R. Zinn*, assistant appellant defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Thomas J. Robinson*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by Douglas A. Sutherland from his conviction of one count of aggravated robbery, contrary to K.S.A. 21-3427.

Sutherland was convicted of the October 5, 1988, aggravated robbery of a Town and Country store located in Wichita. Sutherland, who was 17 years old at the time of the offense, was certified to stand trial as an adult.

Sutherland contends the trial court erred by instructing the jury that a knife is a dangerous weapon and in failing to instruct the jury on robbery and theft as lesser included offenses of aggravated robbery. He also contends that K.S.A. 1989 Supp. 21-4603(3) mandates that his sentence be reduced because the State Reception and Diagnostic Center (SRDC) report recommended a modification of the sentence.

At trial, Sarah Lehman testified substantially as follows. She was working at the Town and Country store on October 5, 1988, in the early morning. At about 12:30 she became suspicious when she saw a man standing outside the building. She asked a customer, Cris Fulps, to go outside and ask the person standing there to leave. The man then turned and walked away.

Lehman later saw the same man, accompanied by another man, standing outside the store. She again went out and asked them if they needed anything. The men told Lehman that they were waiting for a ride. Lehman told the men that she would call the police if they did not leave. The men walked across the street. Lehman observed that both men were wearing brown camouflage paint on their faces.

Lehman was frightened by the men and she asked Fulps to stay in the store with her. At about 4 a.m., the men returned. Sutherland, whom Lehman positively identified at trial, ap-

proached her at her desk and demanded money. The other man stood by Fulps; Lehman identified Aric Baughman at trial as that man. Lehman initially told Sutherland that she did not have any money, and he responded, "Don't play stupid with me; you know what we want."

At this point, she observed that Baughman was holding a knife straight down by his side. She described the knife as about six inches long with a jagged edge. Lehman proceeded to the cash register and opened it, and Sutherland reached in and grabbed the money. Sutherland and Baughman then ran out of the store.

Fulps also testified at trial. He testified he initially saw the tip of a knife blade sticking out the end of the sleeve of the man standing next to him. The man revealed the knife to Fulps and pointed it at him as soon as Sutherland told Lehman not to "play stupid." Fulps described the knife as six to eight inches long. At trial, Fulps was unable to positively identify Sutherland as the man who took the money from Lehman, although he did say that Sutherland looked a lot like him; Fulps did identify Aric Baughman as the man who stood next to him.

Baughman also testified at trial. He testified that he, Sutherland, and several other people were at his mother's house prior to the robbery, where he and Sutherland discussed the robbery. Before they left, they both got knives from the kitchen and put brown paint on their faces. On their way to the Town and Country, they stopped at the Zip-In store to talk with a friend. Their presence at the Zip-In was verified at trial by Douglas Black and Gary Zongker, both of whom stated that either Sutherland or Baughman dropped a knife while they were in the store.

Some time after the robbery, Sutherland was questioned by Wichita Police Detective Mitchell Mervosh, who testified at trial. Mervosh testified that he advised Sutherland of his *Miranda* rights and began questioning him about the robbery. When Mervosh advised Sutherland of the purpose of the interview, Sutherland began crying. According to Mervosh, Sutherland generally denied participation in the robbery, but when asked about the knives, Sutherland replied that he and Baughman obtained them from Baughman's mother's kitchen, and that after the robbery, he and Baughman returned to that residence.

At trial, Sutherland testified on his own behalf to the effect that he was at Baughman's house where a party was underway, but that he did not go to, nor rob, the Town and Country. According to Sutherland, when Baughman left the party, he remained behind until Baughman returned.

Sutherland was found guilty of aggravated robbery and sentenced to 15 years to life.

## AGGRAVATED ROBBERY INSTRUCTION

K.S.A. 21-3427 provides: "Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery."

The following jury instruction, based on PIK Crim. 2d 56.31, was given as instruction No. 9:

"Douglas A. Sutherland is charged with the crime of aggravated robbery. Mr. Sutherland pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That Douglas Sutherland intentionally took property, to-wit: U.S. monies from the person of or in the presence of another, to-wit: Sarah Lehman;

"2. That the taking was by threat of bodily harm to Sarah Lehman;

"3. That Mr. Sutherland was armed with a deadly weapon, to-wit: a knife; and

"4. That this act occurred on or about the 5th day of October, 1988, in Sedgwick County Kansas."

Sutherland argues that instruction No. 9 is erroneous because it instructs that the knife used was a deadly weapon, and the determination of whether it was a deadly weapon is a question of fact for the jury. Sutherland failed to object to this instruction at trial. His failure to object alters our standard of review of the instruction:

"A party may not assign as error the giving or failure to give an instruction unless he objects to the instruction stating the specific grounds for the objection. Absent such objection, an appellate court may reverse only if the trial court's failure to give the instruction was clearly erroneous. [Citations omitted.] The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict." *State v. DeMoss*, 244 Kan. 387, 391-92, 770 P.2d 441 (1989).

In *State v. Davis*, 227 Kan. 174, Syl. ¶ 1, 605 P.2d 572 (1980), in determining whether a defendant was armed with a dangerous weapon during a robbery, this court said the victim's perception of the object used as a weapon is relevant:

"In an appeal from a conviction of aggravated robbery (K.S.A. 21-3427) the court holds a starter pistol is a dangerous weapon. Since robbery has always involved intimidation or fear, the circumstances of the robbery, including the weapon, are examined from the victim's point of view. An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon."

See also *State v. Bowers*, 239 Kan. 417, 422, 721 P.2d 268 (1986) (holding that in determining whether a defendant charged with aggravated assault was armed with a dangerous or deadly weapon, the trier of fact must determine whether the victim reasonably believed the object was a deadly weapon).

In *State v. Colbert*, 244 Kan. 422, 425, 769 P.2d 1168 (1989), the trial court instructed the jury that "a firearm is a deadly weapon as a matter of law." The defendant failed to object to the instruction. The gun the defendant used was defective and inoperable and, on appeal, the defendant argued that whether it was a dangerous weapon was a question for the jury.

In *Colbert*, this court held that, under the facts, the instruction in question was not clearly erroneous as to an aggravated robbery charge. 244 Kan. at 426. During the robbery, the defendant had placed the barrel of the gun in the victim's mouth. The court said:

"Clearly, the robber herein intended the victims to believe the gun was a dangerous or deadly weapon, and the victims reasonably believed it to be such a weapon. As far as the aggravated robbery charges were concerned, the only real issue for the jury was whether or not the defendant was the perpetrator." 244 Kan. at 426.

The instruction in the present case differs from that in *Colbert*. There, the instruction expressly directed the jury that a gun was a deadly weapon. Here, the jury was instructed that an element of the crime the jury had to find was that Sutherland (or Baughman as an accomplice since PIK Crim. 2d 54.05 was given) "was armed with a deadly weapon, to-wit: a knife." This instruction

places the burden on the State to prove the knife is a deadly weapon and does not instruct the jury that it is a deadly weapon.

In the present case, the testimony unambiguously showed that Baughman wielded a knife during the robbery. (The jury was given PIK Crim. 2d 54.05 on responsibility for crimes of another. Implicit in its findings are that Baughman was the armed party.) Sutherland makes much of the fact that the testimony as to the length of the knife varied somewhat. Lehman described it as six inches long. Fulps described it as six to eight inches long. Baughman testified that it was six inches long.

These differences in testimony as to the length of the knife are irrelevant. It is undisputed that Baughman had a knife of at least six inches in length. He pointed the knife at Fulps during the robbery. Lehman testified that she assumed that Baughman would use the knife. The instruction given in this case is not erroneous and the record contains ample evidence from which a jury could conclude the knife was a deadly weapon.

## LESSER INCLUDED CRIMES

Sutherland argues that the trial court erred in failing to instruct the jury on the lesser included offenses of robbery and theft.

K.S.A. 21-3107(3) provides, in part:

"In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced."

Although Sutherland did not request instructions on robbery and theft, a court is under an affirmative duty to give an instruction on a lesser included offense under certain circumstances, even if a defendant fails to request it (and so long as he does not object to it). *State v. Cummings*, 242 Kan. 84, 91, 744 P.2d 858 (1987).

A duty to instruct on lesser included offenses arises only when evidence introduced during trial is such that the defendant might reasonably have been convicted of the lesser offense. *State v. Armstrong*, 240 Kan. 446, 459, 731 P.2d 249, *cert. denied* 482 U.S. 929 (1987). The evidence supporting the lesser crime need not be overwhelming—the instruction must be given even though the evidence may be weak or inconclusive. However, if the evidence at trial excludes a theory of guilt of a lesser offense, the

failure to instruct the jury on some lesser degree of the crime charged is not grounds for reversal. 240 Kan. at 459. "The question is not whether, in the mind of the court, the evidence as a whole excludes the idea that the defendant is guilty of a lesser included offense, but whether there is any substantial evidence tending to prove that lesser included offense." 240 Kan. at 459.

One common situation in which a lesser included instruction need not be given is where the defendant simply denies that he participated in the crime and no evidence is presented which would show that a dangerous weapon was not used in the robbery. In *State v. Mitchell*, 234 Kan. 185, 189-90, 672 P.2d 1 (1983), this court held that the trial court acted correctly in failing to give a lesser included instruction on robbery:

"It is not contested in this case that the robber had a gun. Every witness who was in the bar at the time of the robbery testified that the robber had a gun. This is not a case where the defendant admitted the crime but claimed not to have used a weapon. The question the jury was asked to decide was whether appellant was the robber, not whether a weapon was used."

Sutherland first argues that there is a question as to whether the knife was a deadly or dangerous weapon. As already noted above, the undisputed testimony of Lehman was that she so viewed the weapon. Sutherland also attempts to argue that Fulps' testimony shows that an instruction on robbery should have been given because he stated that the knife was not displayed until after the money was taken.

Sutherland misreads Fulps' testimony. When testifying, Fulps first gave a general description of the robbery. Fulps stated that he saw the tip of the knife as soon as he turned around and looked at Baughman. Fulps then stated, "And then the other guy—at that point he showed me his knife." It is not clear from this testimony at what point Baughman revealed the knife.

After Fulps' general description of the robbery, he testified in more detail in response to specific questions. During this questioning, Fulps specifically stated that Baughman displayed the whole knife when Sutherland said to Lehman, "Don't play stupid . . . ." The testimony of Baughman and Lehman also shows that Baughman displayed the knife prior to obtaining control over the money.

This case is similar to *Mitchell*. It is undisputed that Baughman had a knife and displayed it. Sutherland's defense was that some other person must have committed the robbery with Baughman. There is no evidence upon which the jury could have found Sutherland guilty of robbery rather than aggravated robbery. There was no question for the jury other than Sutherland's presence. The trial court did not err in not giving an instruction on robbery.

Sutherland also argues that the instruction on theft should have been given. K.S.A. 21-3426 defines robbery: "Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force." K.S.A. 21-3701 defines theft and does not require that the property be taken from the presence of another by threat. Theft is a lesser degree of robbery. *State v. Long*, 234 Kan. 580, Syl. ¶ 4, 675 P.2d 832 (1984), *overruled on other grounds State v. Keeler*, 238 Kan. 356, 710 P.2d 1279 (1985).

Sutherland's argument fails. If a robbery instruction was unnecessary, a theft instruction was unnecessary because there was no question for the jury as to whether the threat of force was used.

## FAILURE TO MODIFY SENTENCE

The presentence investigation report recommended that Sutherland receive the minimum sentence. The court gave Sutherland the maximum sentence—15 years to life. In sentencing Sutherland, the court took note that Sutherland's extensive juvenile record included five misdemeanor thefts, one attempted misdemeanor theft, four burglaries, two batteries, and a criminal trespass. He served several years in youth correctional facilities while a juvenile. The court stated the victims of this crime both felt threatened, there was no excuse for the crime, and Sutherland's character and attitude made it likely that his criminal lifestyle would continue.

The SRDC report contains the following recommendation:

"It is recommended that the inmate remain incarcerated. During his incarceration, he should be required to successfully complete a substance abuse program with AA and NA follow-up. . . . Because of his youth, it is rec-

ommended that favorable consideration be given to modification of sentence."

Sutherland filed a motion to modify his sentence. The court stated, "For the reasons set forth at the time of sentencing I'll decline to modify the sentence."

On appeal, Sutherland argues that K.S.A. 1989 Supp. 21-4603(3) mandates that his sentence be reduced because of the recommendations made in the SRDC report. K.S.A. 1989 Supp. 21-4603(3) provides that at any time within 120 days of sentencing, the district court *shall* modify a sentence imposed "if recommended by the state reception and diagnostic center unless the court finds that the safety of the public will be jeopardized and that the welfare of the inmate will not be served by such modification." The legislature has amended this statute (L. 1990, ch. 101, § 4) and, although not applicable to this case, it currently requires the court to find and set forth with particularity the reasons for finding that the safety of members of the public will be jeopardized *or* that the welfare of the inmate will not be served by such modification.

K.S.A. 1989 Supp. 21-4603(3) became effective July 1, 1989. Prior to the amendment, the section provided that the court "may" modify a sentence.

The robbery of the Town and Country took place on October 5, 1988. Defendant was sentenced on May 5, 1989. The only portion of the proceeding in this case to take place after the effective date of the amendment was the motion to modify, which was filed on July 13, 1989.

Sutherland contends the trial court erred in failing to follow the SRDC recommendation for a reduction of his sentence, where it made no finding that such a modification would not be in Sutherland's welfare.

The Kansas Court of Appeals has filed conflicting decisions concerning the issue of whether K.S.A. 1989 Supp. 21-4603(3) operates prospectively or is retroactive.

In *State v. Sylva*, 14 Kan. App. 2d, 609, 795 P.2d 947 (1990), a panel of the Court of Appeals relied on *State v. Nunn*, 244 Kan. 207, 216, 768 P.2d 268 (1989), and *State v. Henning*, 3 Kan. App. 2d 607, 609, 599 P.2d 318 (1979), holding K.S.A. 1989 Supp. 21-4603(3) to be a substantive statute that prescribes pun-

ishment as opposed to a procedural statute and, therefore, is to be applied prospectively. On petition for review, we affirmed this holding of the Court of Appeals. *State v. Sylva,* 248 Kan. 118, 804 P. 2d 967 (1991).

In *State v. Moon,* 15 Kan. App. 2d, 4, 801 P.2d 59 (1990), a different panel of the Court of Appeals reached the conclusion that the statute in question applies retroactively. In *Moon,* the court reasoned:

"K.S.A. 1989 Supp. 21-4603(3)(a) provides that 'any time within 120 days *after a sentence is imposed* . . . the court may modify such sentence . . . and shall modify such sentence if recommended by the state reception and diagnostic center.' (Emphasis added.) The statute comes into play only after a defendant has been charged, convicted, and sentenced. It acts to regulate the steps by which a defendant convicted of a crime is punished and there-fore, by definition, is a procedural criminal law. The statute does not alter the punishment itself. This fact becomes particularly clear in cases in which SRDC has recommended probation. Probation is defined as a procedure whereby a defendant, found guilty of a crime, is released by the court after imposition of sentence, without imprisonment, subject to various conditions. K.S.A. 21-4602(3). Probation is separate and distinct from sentencing. *State v. Dubish,* 236 Kan. 848, Syl. ¶ 2, 696 P.2d 969 (1985).

"We are mindful of the fact that another panel of this court recently determined the 1989 amendment to 21-4603(3)(a) is a substantive change which only operates prospectively to offenses committed after its effective date. *State v. Marks,* 14 Kan. App. 2d 594, 796 P.2d 174 (1990), *rev. denied* 247 Kan. 706 (September 20, 1990). *See State v. Sylva,* 14 Kan. App. 2d 609, 795 P.2d 947 (1990), *rev. granted* 247 Kan. 706 (September 20, 1990). In *Marks,* the court found the 1989 amendment 'materially limits the court's sentencing discretion and is therefore substantive not procedural.' 14 Kan. App. 2d at 599. While it is true the amendment does limit the court's sentencing discretion, that fact does not render the amendment substantive. A substantive law is one which makes an act criminal and prescribes the punishment for that act. *Hutchison,* 228 Kan. at 287. A law is not made substantive by the mere fact it alters the court's discretionary authority to direct how the sentence will be served. The law at issue must affect the substantive rights of the defendant before retroactive application of the law is constitutionally impermissible. *Miller v. Florida,* 482 U.S. at 429; *Weaver v. Graham,* 450 U.S. at 29. The amendatory language in 21-4603(3)(a) does not prejudicially affect the defendant's substantive rights." 15 Kan. App. 2d at 9-10.

In *Moon,* the Court of Appeals devotes considerable analysis to whether the statute is an ex post facto law, and the court

correctly reasons that it is not. Whether the statute violates the constitutional prohibition against ex post facto laws is immaterial, however, since legislative intent must be first ascertained. *State v. Dubish*, 236 Kan. 848, 853, 696 P.2d 969 (1985). If it is determined the legislature intended the statute to apply retroactively, the analysis then turns to whether the statute violates the constitutional prohibition against ex post facto laws.

The legislature is aware of this court's established rules of statutory construction. The legislature is aware, and has, on many occasions, used specific language to clearly set forth whether a statute is to be applied prospectively or retrospectively. For example, the legislature adopted K.S.A. 1989 Supp. 22-3725 to be effective one month after the effective date of K.S.A. 1989 Supp. 21-4603(3) and continued the provision in 22-3725 that "regardless of when the inmate was sentenced or committed the crime for which sentenced, good time credits shall be allocated as follows: . . ." In amending 21-4603(3), the legislature chose not to use specific language, so we must turn to the applicable rules of construction of legislative acts.

The fundamental rule is that a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively. *State v. Hutchison*, 228 Kan. 279, 287, 615 P.2d 138 (1980). An exception to the fundamental rule is that if the statutory change does not prejudicially affect the substantive rights of the *parties* and is merely procedural or remedial in nature, it applies retroactively. 228 Kan. at 287. Thus, the issue becomes whether the statute is substantive criminal law, which either defines a crime or involves the length or type of punishment.

Here, the defendant had been sentenced, but the sentence was not final and was subject to change for 130 days. The sentence to be served was subject to reduction, and the defendant could also have been placed on probation. Thus, we disagree with the Court of Appeals' reasoning in *State v. Moon* that the statute in question does not alter the punishment itself. The statute, assuming it is constitutional (and its constitutionality is not challenged in this case), mandates that the sentencing court shall modify (reduce) the sentence imposed. Thus, it deals with the length of the sentence to be imposed and not merely how the

sentence is to be served or how the length of the sentence is to be determined.

In *State v. Hutchison*, the defendant was 16 years old when he used a firearm to commit aggravated robbery and aggravated burglary. When the crimes were committed, the mandatory firearm sentencing statute (K.S.A. 1976 Supp. 21-4618) applied to any person committing a crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated and who used a firearm during the commission of a crime. The defendant was sentenced and two months later (within the 130-day sentence modification period), the legislature amended 21-4618 to provide that it *not* apply to any crime committed by a person under 18 years of age.

Hutchison argued that the statute as amended should be applied retroactively to exclude him from the mandatory firearm sentencing. This court went through the prospective/retrospective analysis and cited *State v. Ogden*, 210 Kan. 510, Syl. ¶ 10, 502 P.2d 654 (1972), for the proposition that *changes* in length of sentences for criminal acts have been given prospective application only. 228 Kan. at 287. We also quoted *State v. Henning*, 3 Kan. App. 2d at 609, where the Kansas Court of Appeals stated that " '[t]he penalty for a criminal offense is the penalty provided by statute at the time of the commission of the offense.' " 228 Kan. at 287. *State v. Henning* dealt with the issue of whether a statutory change allowing an imposed Kansas sentence to run concurrently with an out-of-state sentence could be applied retroactively, and the answer as set out above was "no"; in the absence of legislative expression otherwise, it was to be applied prospectively only.

In *Kelsey v. State*, 194 Kan. 668, 670, 400 P.2d 736 (1965), we reversed the trial court for applying an amended sentencing statute retroactively. The original statute (G.S. 1949, 62-1528) provided that any person on parole, who is convicted of a subsequent crime, shall serve the second sentence after the first is served. The amended version of the statute (K.S.A. 62-2251 [Corrick]) provided that a prisoner would serve the second sentence concurrently with the first, unless otherwise ordered by the court. We held that the penalty for an offense is that provided by statute

at the time the offense was committed and that the amended sentencing statute could not be applied retroactively.

From the above, we conclude K.S.A. 1989 Supp. 21-4603(3) should be applied prospectively and is not applicable to this case.

Although the issue is not before us, we hope that when the State Reception and Diagnostic Center intends to make a recommendation pursuant to K.S.A 1989 Supp. 21-4603(3), it will cite the statute and give specific guidelines as to what it is recommending.

Under the facts, we hold that the trial court did not abuse its discretion in failing to modify Sutherland's sentence.

Affirmed.