(838 P.2d 336)

No. 66,501

IN THE MATTER OF THE APPLICATION OF CARROLL E. NOEL, JR., FOR HEARING PURSUANT TO K.S.A. 22-3428a.

Opinion filed August 7, 1992.

*Terry R. Fuller*, of Kinsley, for appellant Noel.

*Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, for appellee State of Kansas.

Before RULON, P.J., REES and PIERRON, JJ.

RULON, J.: Carroll E. Noel, Jr., petitioner, participated in a hearing pursuant to K.S.A. 1991 Supp. 22-3428a to determine whether he was eligible for release from Larned State Security Hospital. The district court found that petitioner was dangerous to others and ordered that he remain committed. Petitioner appeals, raising multiple issues.

We must determine: (1) if the district court erred by failing to consider petitioner's conditional release; (2) if the district court erred by failing to order that petitioner be placed in a less restrictive environment; and (3) the significance of recently enacted amendments to K.S.A. 1991 Supp. 22-3428 and the recently decided United States Supreme Court case of *Foucha v. Louisiana*, 504 U.S. ___, 118 L. Ed. 2d 437, 112 S. Ct. 1780 (1992). We remand with instructions for further proceedings.

## Factual History

In 1973, petitioner brutally stabbed and killed the postmaster of the Kansas City, Kansas, post office. In an opinion filed by our Supreme Court in 1979 in relation to an earlier application for discharge, the court summarized the facts concerning petitioner's case as follows:

"Noel, a black male, has never married. He was approximately 38 years old at the time of commitment. Prior to the homicide, he was described as a quiet man who apparently had never broken the law, even to the point of acquiring a traffic ticket. Throughout his life he was characterized as a 'loner', unable to make friends or trust anyone. These characteristics began in childhood and became more pronounced as the years went by. Feelings of persecution developed, with Noel believing that people were laughing at him, ridiculing him, and plotting against him. In time, the feelings of

persecution deepened and became the dominant factor in his life. In 1972 he was working for the United States Post Office in Wyandotte County. By this time his condition had deteriorated to such a degree that outsiders were noticing that something was wrong. In 1972 Noel was complaining to the union steward and other authorities at the post office about plots against him and his sisters. The union steward concluded Noel had a serious psychiatric problem and urged Noel's family to seek psychiatric treatment for him. As a result thereof, in June, 1972, Noel became a patient in the psychiatric ward of a Veterans Administration Hospital.

"In the V.A. Hospital Noel's illness was diagnosed as paranoid schizophrenia. Even as early as 1972, the object of Noel's delusions was the United States Postal Service. With tranquilizing medication, Noel's symptoms were controlled. He was discharged from the hospital after a short stay, with instructions to continue taking the medication. Noel stopped taking the medication, apparently, shortly after his discharge. The delusions resurfaced with ever increasing intensity. Noel concluded the post office was going to force his sisters into prostitution; he saw postal trucks and their drivers as being armed with machine guns; and he believed a great postal conspiracy existed to harm him and his sisters. The postmaster, in Noel's mind, became the head of the conspiracy and his chief tormentor. Voices told him he must kill the postmaster to end the danger.

"On November 29, 1973, after some two weeks of planning, Noel drove to the Kansas City, Kansas, post office, lawfully parked his car, concealed a long knife on his person, walked into the postmaster's office, and stabbed the postmaster to death (inflicting nine separate wounds). After having completed the task he came to do, he remained in the office and offered no resistance when arrested.

"Noel was originally charged with murder in the federal court. Subsequently, this charge was dismissed and he was charged with first degree murder in the state court. While the federal charge was pending, Noel was examined, at federal request, by Dr. William V. McKnelly, Jr. Dr. McKnelly contacted the V.A. Hospital and obtained the data on Noel's prior hospitalization. He testified at the state trial. The doctor concurred with the V.A. diagnosis of paranoid schizophrenia and characterized the V.A.'s release of Noel as a blunder. Dr. McKnelly's testimony was thorough and showed extensive knowledge of Noel's background and condition. The bottom line of the McKnelly opinion is that Noel is and always will be a paranoid schizophrenic; that his is an extreme case of the disease; that Noel's potential for violent acts will remain; and that the disease may be suppressed in a structured setting with a low stress factor and daily appropriate administration of tranquilizing medication.

"At trial Noel was found not guilty because of insanity and he was committed to the State Security Hospital at Larned. He was admitted to that facility on March 20, 1974." *In re Noel*, 226 Kan. 536, 541-42, 601 P.2d 1152 (1979).

On April 13, 1990, petitioner filed a K.S.A. 60-1501 petition in the Pawnee County District Court. The petition alleged: (1) that he was being held on "[f]alse and trumped up charges"; (2) that his confinement and restraint was unlawful; and (3) that he had been denied annual hearings for a 10-year period. For reasons which are not clear from the record, the district court did not directly consider petitioner's action as a habeas corpus proceeding. Instead, the court appointed an attorney to represent petitioner and a notice was sent to the Clinical Director of the Larned State Security Hospital indicating that petitioner had requested an annual hearing to which he was entitled pursuant to K.S.A. 1991 Supp. 22-3428a.

At the hearing on the petition, the court considered a written Forensic Staff Conference Summary from members of the staff of the State Security Hospital dated April 20, 1990, and a written summary of an independent psychiatric evaluation performed by Dr. William S. Logan, a psychiatrist and director of the Department of Law and Psychiatry at the Menninger Clinic in Topeka. The court also heard oral testimony from Dr. Logan; from Harold Dixon, a psychologist on the staff of the State Security Hospital; and from Dr. William R. Suleiman, a staff psychiatrist with the State Security Hospital, all of whom had recently interviewed Noel.

All of the witnesses agreed upon a diagnosis of paranoid schizophrenic, chronic. Dixon and Dr. Suleiman classified this condition as "in remission." Dr. Logan disagreed with any finding that petitioner's condition was in remission.

The evidence showed petitioner's condition has existed since at least 1972. He has exhibited no physical violence since 1974, and although petitioner has made some veiled threats against others, he has never threatened anyone with the immediate apparent ability to carry out those threats. Petitioner has generally been cooperative, compliant, and friendly toward others.

Petitioner was further characterized as quiet, withdrawn, suspicious of others, and guarded. He isolates himself from others, has few peer relationships, and reveals little about his inner thoughts.

Prior to admission, petitioner indicated experiencing auditory hallucinations in the form of voices that spoke to him and which had directed him to seek out and kill the postmaster. Petitioner has denied experiencing any such auditory hallucinations since his admission to the State Security Hospital, although Dr. Suleiman pointed out that this fact is difficult to confirm due to petitioner's reluctance to be open about his thoughts.

Petitioner has received no psychotropic medications during the past several years. He had previously received thorazine, followed by mellaril, followed by prolixin, but in 1986 he began to experience tardive dyskinesia, a movement disorder, as a side effect, and his medication was discontinued. Dr. Suleiman indicated that he did not believe psychotropic drugs would be helpful to petitioner's condition.

Petitioner's therapy is limited to activity therapy and milieu therapy. These are aimed primarily at improving his socialization. Petitioner receives no other treatment addressing his mental condition, and Dr. Logan described this program as essentially custodial.

Petitioner maintains the fixed delusional system which caused him to kill the postmaster. He refuses to admit that he killed the postmaster. At times he indicates that he believes the postmaster is still alive. At other times he indicates that a man named Ellsworth may have been the true killer. Petitioner maintains he only inflicted superficial wounds upon the postmaster and that the wounds he inflicted do not match the wounds indicated by the autopsy report.

Petitioner still apparently believes that one of his co-workers at the post office retained the postmaster to kill him and harm his family. He also continues to believe that his own brother-in-law was an accomplice of the postmaster and was also guilty of raping petitioner's sister. When recently asked what he would do if he was released and he met the postmaster, petitioner replied, "If I find him I will kill him."

The evidence further indicated that on August 5, 1989, petitioner, in a written complaint concerning a sweater that he believed had been stolen, wrote "I've been missing my green sweater worth $35.00 and if I ever suspect any aide of stealing I most certainly will burst his mother fucking skull. I'm doing

time on some white mans [*sic*] crime and do not intend to be fucked with but I'm not suicidal however, I can be homicidal where true justice is abused." There was also evidence presented of other less recent notes written by petitioner containing similar threats.

Dixon concluded that petitioner remains potentially harmful to others due to his lack of insight and felt the risk of harm to others would increase if he were to be subjected to the stresses he might encounter outside a structured hospital setting. Dr. Suleiman essentially agreed with this assessment.

Dr. Logan testified that petitioner's lack of insight and his expressed unwillingness to cooperate in any aftercare program if released made either discharge or conditional release inappropriate. Dr. Logan expressed particular concern with the danger that petitioner might misidentify someone as the postmaster and act upon that misidentification. While Logan felt that transfer outside a hospital setting would be potentially dangerous to others, he believed petitioner could be transferred to a less restrictive state hospital setting. Dr. Logan apparently based this opinion on his belief that petitioner gives warning by writing notes when he is angry and that this would serve to alert hospital staff to the need for clinical intervention before petitioner could act on his anger.

After hearing all the evidence, the district court found that petitioner was likely to cause harm to others if removed from the structured setting of Larned State Security Hospital and ordered that he remain committed there.

## CONDITIONAL RELEASE

In order to address the first issue raised by petitioner we must closely examine the relevant statutory framework. K.S.A. 1991 Supp. 22-3428a authorizes an annual hearing, when requested by the committed patient, to consider discharge or conditional release. The relevant sections of that statute provide:

"(3) At the hearing the committed person shall have the right to present evidence and cross-examine the .witnesses. The court shall receive all relevant evidence, including the written findings and recommendations of the chief medical officer of the state security hospital or state hospital where the person is under commitment, and shall determine whether the committed person will be likely to cause harm to self or others if discharged.

At the hearing the court may make any order that a court is empowered to make pursuant to subsections (3), (4) and (5) of K.S.A. 22-3428 and amendments thereto. If the court finds by clear and convincing evidence the committed person will not be likely to cause harm to self or others if discharged, the court shall order the person discharged; otherwise, the person shall remain committed or be conditionally released."

K.S.A. 1991 Supp. 22-3428(7) provides:

"As used in this section and K.S.A. 22-3428a and amendments thereto, 'likely to cause harm to self or others' has the meaning provided by K.S.A. 59-2902 and amendments thereto."

K.S.A. 1991 Supp. 59-2902(g) defines " '[l]ikely to cause harm to self or others' " to mean:

"(1) Is likely, in the reasonably foreseeable future, to cause substantial physical injury or physical abuse to self or others or substantial damage to another's property, as evidenced by behavior causing, attempting or threatening such injury, abuse or damage; or

"(2) is substantially unable, except for reason of indigency, to provide for any of the person's basic needs, such as food, clothing, shelter, health or safety causing a substantial deterioration of the person's ability to function on the person's own."

Petitioner contends that, notwithstanding a finding that he is likely to cause harm to himself or others if unconditionally discharged, the court is authorized to consider his conditional release.

At trial, the district court stated:

"It is my opinion that I have a very narrow issue to determine on applications for review under 22-3428(a) [*sic*]. And that is if the proposed patient is likely to cause harm to self or others. If I make that determination then the only thing I can do is to commit him back to the institution. If I don't find him to be a danger to himself or others then I formulate, Mr. Fuller, a conditional release plan."

Petitioner contends this statement demonstrates the district court, once finding that he was likely to cause harm to others, erred by then refusing to go on to consider conditional release.

We believe there is merit to petitioner's claim. The relevant portion of K.S.A. 1991 Supp. 22-3428a(3) provides: "If the court finds by clear and convincing evidence the committed person will not be likely to cause harm to self or others if discharged, the court shall order the person discharged; otherwise, the person shall remain committed *or be conditionally released.*" (Emphasis

added.) Interpretation of a statute is a question of law. *State v. Miller*, 15 Kan. App. 2d 566, 567, 811 P.2d 1256 (1991). By the clear and unambiguous language of K.S.A. 1991 Supp. 22-3428a(3), the district court, after finding the committed patient likely to cause harm to self or others if unconditionally discharged, may still consider a conditional discharge.

K.S.A. 1991 Supp. 22-3428 and K.S.A. 1991 Supp. 22-3428a must clearly be considered "in pari materia." K.S.A. 1991 Supp. 22-3428a provides that, in a hearing initiated by the committed patient, the district court may make any order it is empowered to make pursuant to sections (3), (4), and (5) of K.S.A. 1991 Supp. 22-3428. K.S.A. 1991 Supp. 22-3428(3) provides:

"At the conclusion of the hearing, if the court finds by clear and convincing evidence that the patient will not be likely to cause harm to self or others if released or discharged, the court shall order the patient discharged or conditionally released, otherwise the court shall order the patient to remain in the state security hospital or state hospital where the patient is under commitment. *If the court finds by clear and convincing evidence presented at the hearing that the release or discharge of the patient will not be likely to cause harm to self or others if the patient continues to take prescribed medication or to receive periodic psychiatric or psychological treatment, the court may order the patient conditionally released in accordance with subsection (4).* If the court orders the conditional release of the patient, the court may order as an additional condition to the release that the patient continue to take prescribed medication and report as directed to a person licensed to practice medicine and surgery to determine whether or not the patient is taking the medication or that the patient continue to receive periodic psychiatric or psychological treatment." (Emphasis added.)

There is every reason to believe that the legislature, in enacting K.S.A. 1991 Supp. 22-3428a, intended that due consideration be given by the district court to protection of the public when deciding whether to grant conditional release. K.S.A. 1991 Supp. 22-3428(3) states that the court "may" (not "shall") grant conditional release. Therefore, conditional release pursuant to K.S.A. 1991 Supp. 22-3428a is a decision left to the discretion of the district court.

Furthermore, when K.S.A. 1991 Supp. 22-3428a is read in conjunction with K.S.A. 1991 Supp. 22-3428(3) and (4), it is clear the legislature intended that the district court grant conditional release only when the conditions of the release will adequately insure that the patient will not be likely to cause harm to self

or others. If adequate safeguards cannot be crafted, then the patient should not be discharged. Given that petitioner has already indicated his unwillingness to participate in any aftercare program, our remand to the district court to consider conditional release may be an exercise in futility. Nevertheless, we cannot say with certainty that no conditions of release could be imposed that would insure the safety of the public. Therefore, we remand with instructions to the district court to consider conditional release under the statutory scheme earlier discussed.

Petitioner further contends that the district court failed to consider the definition of the term "likely to cause harm to self or others" contained in K.S.A. 1991 Supp. 59-2902(g) when making its findings on the issue of his dangerousness to others. The court expressly found that petitioner was "likely to cause harm to others" and there is no evidence to demonstrate the court was unaware of the statutory definition of the terms used. The court's findings were clearly supported by substantial competent evidence of a clear and convincing nature.

## LESS RESTRICTIVE ENVIRONMENT

Petitioner contends that the district court should have considered and ruled upon his request of transfer for treatment in the least restrictive environment. Petitioner, as we understand, was seeking transfer from the State Security Hospital at Larned to Osawatomie State Hospital or to the less restrictive state hospital in Larned. The State contends that only the chief medical officer at the State Security Hospital, and not the district court, is statutorily authorized to make decisions concerning transfer and placement. The court did not expressly rule on petitioner's request for transfer, so its reasoning on this matter is not clear to us.

K.S.A. 1991 Supp. 22-3428a(1) states that a hearing pursuant to that statute is to "determine whether or not the person will be likely to cause harm to self or others if discharged." K.S.A. 1991 Supp. 22-3428a(3) provides that at this hearing the court is empowered to make any order authorized by K.S.A. 1991 Supp. 22-3428(3), (4), and (5). None of these provisions authorize the court to consider a transfer to a less restrictive setting or to consider any other issues other than discharge, conditional re-

lease, or recommitment. K.S.A. 1991 Supp. 22-3428(5) allows the court to order the patient to a state hospital, but this is only when the patient has been conditionally released and is failing to comply with the conditions of the conditional release.

If petitioner's petition was based solely on the authority of K.S.A. 1991 Supp. 22-3428a, the district court would not have subject matter jurisdiction to consider his request for transfer. The original petition, however, was in the form of a habeas corpus action pursuant to which the district court would clearly have jurisdiction to consider this issue. See *In re Jones*, 228 Kan. 90, 104-05, 612 P.2d 1211 (1980). We do not believe petitioner should be penalized just because the court chose to treat his habeas corpus petition only as a request for his annual hearing.

The next question to be addressed is whether the district court was authorized or required to grant petitioner's request for placement in a less restrictive environment. The United States Supreme Court has avoided addressing the issue of whether placement in the least restrictive institutional setting is a requirement of substantive due process. Other jurisdictions seem to have uniformly rejected finding such a right except where the state legislature has specifically provided a statutory right. See *S.H. v. Edwards*, 860 F.2d 1045, 1046 (11th Cir. 1988), *cert. denied* 491 U.S. 905 (1989), *vacated, reh. en banc granted* 880 F.2d 1203 (11th Cir. 1989); *Lelsz v. Kavanagh*, 807 F.2d 1243, 1247, 1251 (5th Cir. 1987); *Gieseking v. Schafer*, 672 F. Supp. 1249, 1266 (W.D. Mo. 1987). Kansas has created no statutory right to transfer or placement into the least restrictive setting.

K.S.A. 1991 Supp. 22-3428(2) states: "Whenever it appears to the chief medical officer of the state security hospital that a person committed under this section is not dangerous to other persons, the officer may transfer the person to any state hospital." Transfer under this section is left to the discretion of the chief medical officer. Furthermore, the legislature clearly intended that public safety be a significant consideration when determining whether a patient is to be transferred. The intent was clearly to avoid any transfer while the patient remained dangerous to others. There is a rational basis for this policy, given that only the State Security Hospital provides substantial and ongoing security as a basic part of its program and a staff which presumably has the greatest

expertise in evaluating and treating potentially dangerous patients.

The United States Supreme Court has held that the Due Process Clause does not require a hearing when the State decides to transfer state prisoners. *Olim v. Wakinekona,* 461 U.S. 238, 244-45, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983). Logic indicates that no hearing would be required when the State decides not to transfer a prisoner. The Kansas Legislature has made the decision whether to transfer a patient one of purely administrative discretion. Administrative decisions are ordinarily reviewable pursuant to K.S.A. 77-501 *et seq.* Given the district court's factual finding that petitioner is dangerous to others, there is no valid basis for finding the hospital's failure to transfer petitioner to be unreasonable or erroneous. See K.S.A. 77-621.

## RECENT STATUTORY AMENDMENTS AND CASE LAW

At oral argument, in addition to the parties' written briefs, the defendant requested that we consider the recently enacted amendments to K.S.A. 1991 Supp. 22-3428 contained in L. 1992, ch. 309, § 3 and the recently decided United States Supreme Court case of *Foucha v. Louisiana,* 504 U.S. ___, 118 L. Ed. 2d 437, 112 S. Ct. 1780 (1992), in conjunction with the statutory scheme discussed above.

### L. 1992, ch. 309, § 3

K.S.A. 1991 Supp. 22-3428 is primarily concerned with the procedures for hospital-initiated transfer, discharge, and conditional release of insanity acquittees, while procedures for patient-initiated release are dealt with by K.S.A. 1991 Supp. 22-3428a. L. 1992, ch. 309, § 3 does not directly amend K.S.A. 1991 Supp. 22-3428a, the statute pursuant to which petitioner sought release. K.S.A. 1991 Supp. 22-3428a authorizes the district court, at the patient-initiated hearing, to make any order it would be empowered to make pursuant to K.S.A. 1991 Supp. 22-3428(3), (4), and (5), and L. 1992, ch. 309, § 3 amends K.S.A. 1991 Supp. 22-3428(3). K.S.A. 1991 Supp. 22-3428(2), before L. 1992, ch. 309, § 3 was enacted, authorized patient transfer to another state hospital when it appeared to the chief medical officer of the state security hospital that the patient was no longer dangerous to others. Even after such a finding was made, the decision of

whether to make such a transfer was still left to the discretion of the chief medical officer.

The 1992 amendments to K.S.A. 1991 Supp. 22-3428(2) and (3) now place the final decision of whether to transfer a patient in the district court. Transfer under 22-3428 is still to be initiated by the chief medical officer, but the district court must then hold a hearing to determine whether the patient is likely to cause harm to himself or others if transferred. If the court finds by clear and convincing evidence the patient will not be likely to cause harm to self or others if transferred, the statute, as now amended, requires that the court *shall* order the patient transferred; the decision at that point is no longer discretionary. The statutory language in the amendments does not clearly authorize the district court to order transfer pursuant to K.S.A. 1991 Supp. 22-3428a where the action is *not* initiated by the chief medical officer. In any event, none of these changes are relevant to our case as L. 1992, ch. 309, § 3 does not have retrospective application.

"The fundamental rule is that a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively." *State v. Sutherland,* 248 Kan. 96, 106, 804 P.2d 970 (1991).

"The legislature is aware of [the Kansas Supreme Court's] established rules of statutory construction. The legislature is aware, and has, on many occasions, used specific language to clearly set forth whether a statute is to be applied prospectively or retrospectively." 248 Kan. at 106. No language authorizing retrospective operation appears in L. 1992, ch. 309, § 3.

"An exception to the fundamental rule [of prospective operation of statutes] is that if the statutory change does not prejudicially affect the substantive rights of the *parties* and is merely procedural or remedial in nature, it applies retroactively." (Emphasis in original.) 248 Kan. at 106.

L. 1992, ch. 309, § 3 clearly creates a substantive right to transfer upon the proper findings, and so is not merely procedural or remedial in nature.

We conclude the amendments in L. 1992, ch. 309, § 3 relevant to the appeal before us are prospective only and so cannot affect the outcome of the present case.

### Foucha v. Louisiana

In *Foucha v. Louisiana*, 504 U.S. ___, 118 L. Ed. 2d 437, 112 S. Ct. 1780 (1992), Terry Foucha, a defendant in a criminal case, had been found not guilty by reason of insanity and committed to a mental hospital. Approximately four years later, the superintendent of the mental hospital to which Foucha was committed recommended that Foucha be discharged or released. A hearing panel was convened at the institution to consider his case. The panel reported that there had been no evidence of Foucha's mental illness since his admission. Two doctors appointed by the trial court to examine Foucha found he was in remission from mental illness, but stated that they were unable to certify that Foucha would not constitute a menace to himself or others if released. One of the doctors testified that Foucha had an antisocial personality, but that this condition did not constitute a mental disease and was untreatable. 118 L. Ed. 2d at 444-45.

Under the statutory scheme in Louisiana, to justify continued commitment of insanity acquittees, the State was not required to prove anything; the statute placed the burden of proof on the patient to show that he was no longer dangerous. 118 L. Ed. 2d at 449. The statutory scheme did not require the additional finding that the patient was also still mentally ill. The trial court ruled that Foucha was still dangerous to himself and others and, under the Louisiana statutory scheme, ordered him returned to the mental institution. 118 L. Ed. 2d at 445.

The United States Supreme Court concluded Foucha's continued commitment was a violation of due process, holding that a " 'committed acquittee is entitled to release when he has recovered his sanity *or* is no longer dangerous,' [Citation omitted] *i.e.* the acquittee may be held as long as he is *both* mentally ill *and* dangerous, but no longer." (Emphasis added.) 118 L. Ed. 2d at 446. Because Louisiana did not contend that Foucha was still mentally ill, the Supreme Court held that Foucha must be released. 118 L. Ed. 2d at 447.

In addition, the *Foucha* Court also held that the Louisiana statute was unconstitutional because it discriminated against insanity acquittees in violation of the Equal Protection Clause of

the 14th Amendment. Although the Court recognized that insanity acquittees may be treated differently in some respects from those subject to civil commitment, it seemed to suggest that continued commitment must be based on a showing of insanity and dangerousness by clear and convincing evidence, with the burden of proof placed on the State. 118 L. Ed. 2d at 451-52.

The Kansas statutory scheme, like that of Louisiana, requires only a showing of dangerousness to justify continued commitment. Like Louisiana, it does not require proof that the patient is also mentally ill. The burden of proof is also placed upon the patient to prove he or she is not dangerous. See K.S.A. 1991 Supp. 22-3428(3) and K.S.A. 1991 Supp. 22-3428a(3).

The current statutory scheme used to determine the need for continued commitment of insanity acquittees violates the Due Process and Equal Protection Clauses of the 14th Amendment by not placing the burden of proof upon the State to show by clear and convincing evidence both the committed person's continued insanity and dangerousness. As required by *Foucha v. Louisiana*, we engraft such requirements into the Kansas statutory scheme.

The court in *Foucha* did hold that a state may originally commit a person found not guilty by reason of insanity without showing by clear and convincing evidence the two statutory preconditions to commitment because it is proper to infer from such a verdict that the person was still mentally ill and dangerous at the time of the commitment. 118 L. Ed. 2d at 445-46. There is no evidence then that petitioner's commitment was improper. However, there was no finding in this case, as with *Foucha*, that petitioner is no longer mentally ill. The testimony of the witnesses was conflicting on this matter and the court did not make a finding of fact. We remand the cause for a new hearing with instructions to the district court concerning the State's burden of proof necessary to justify continued commitment.

Remanded for further proceedings.

REES, J., concurring: This is a patient-initiated proceeding instituted by Carroll E. Noel, Jr., a committed insanity acquittee, pursuant to K.S.A. 1991 Supp. 22-3428a. Its subject is Noel's continued commitment to the State Security Hospital. Noel seeks

discharge, conditional release, or transfer to a state hospital. He appeals from the March 14, 1991, district court decision ordering continued commitment to the State Security Hospital.

Without question, insanity acquittee discharge is a highly sensitive subject. *In re Noel*, 226 Kan. 536, 556, 601 P.2d 1152 (1979).

In a proceeding of this sort, the principal or key question for determination is whether the insanity acquittee continues to be dangerous to himself, herself, or others. That is a legal rather than a medical question. 226 Kan. at 552.

Because K.S.A. 1991 Supp. 22-3428a(3) provides that "[a]t the hearing the court may make any order that a court is empowered to make pursuant to subsections (3), (4), and (5) of K.S.A. 1991 Supp. 22-3428," K.S.A. 1991 Supp. 22-3428 and K.S.A. 1991 Supp. 22-3428a must be read together. K.S.A. 1991 Supp. 22-3428a states in pertinent part:

"(1) [An insanity acquittee] shall be entitled annually to request a hearing to determine whether or not the person will be likely to cause harm to self or others if discharged . . . .

. . . .

"(3) At the hearing . . . [t]he court shall receive all relevant evidence . . . and shall determine whether the committed person will be likely to cause harm to self or others if discharged. . . . If the court finds by clear and convincing evidence the committed person will not be likely to cause harm to self or others if discharged, the court shall order the person discharged; otherwise the person shall remain committed *or be conditionally released*." (Emphasis added.)

Orders authorized by incorporation of K.S.A. 1991 Supp. 22-3428(3), (4), and (5) are identified by this text appearing within those three subsections:

"(3) . . . At the hearing, the court shall receive all relevant evidence .. . . and shall determine whether the patient will be likely to cause harm to self or others if released or discharged . . . . At the conclusion of the hearing, if the court finds by clear and convincing evidence that the patient will not be likely to cause harm to self or others if released or discharged, the court shall order the patient discharged *or conditionally released*, otherwise the court shall order the patient to remain in the state security hospital or state hospital where the patient is under commitment. If the court finds by clear and convincing evidence presented at the hearing that the release or discharge of the patient will not be likely to cause harm to self or others *if* the patient continues to take prescribed medication or

to receive periodic psychiatric or psychological treatment, the court *may order the patient conditionally released . . . .*" *(Emphasis added.)*

In addition to the foregoing, K.S.A. 1991 Supp. 22-3428(7) ascribes to the term "likely to cause harm to self or others" its K.S.A. 1991 Supp. 59-2902(g) definition:

"[T]he person:

"(1) [i]s likely, in the reasonably foreseeable future, to cause substantial physical injury or physical abuse to self or others or substantial damage to another's property, as evidenced by behavior causing, attempting or threatening such injury, abuse or damage; or

"(2) is substantially unable, except for reason of indigency, to provide for any of the person's basic needs, such as food, clothing, shelter, health or safety causing a substantial deterioration of the person's ability to function on the person's own."

The journal entry memorializing the now-challenged district court decision recites that the district court found Noel "is likely to cause harm to others if removed from the structured setting of Larned State Security Hospital, and that he should remain unconditionally committed." The journal entry further recites that the district court "adjudged" and "ordered" that "Noel continues to be a danger to others and that his discharge from the Larned State Security Hospital will pose a danger to others and that pursuant to [K.S.A. 1991 Supp. 22-3428a], the said Carroll E. Noel, Jr. shall remain committed in the Larned State Security Hospital at Larned, Kansas."

The present appeal is prompted by this statement by the district court at the close of the hearing:

"It is my opinion that I have a very narrow issue to determine on applications for review under [K.S.A. 1991 Supp. 22-3428a]. And that is if the . . . patient is likely to cause harm to self or others. If I make that determination then the *only* thing that I can do is to commit him back to the institution. If I don't find him to be a danger to himself or others then I formulate . . . a conditional release plan. . . .

"[B]ased upon the evidence that I've heard today and the restrictions that are imposed upon me by the law, and that being that it has to be a clear and convincing demonstration and I don't think that the evidence supports that, I do find that Mr. Noel based upon the evidence I've heard . . . that *he still constitutes likely to cause harm to himself or others and therefore he would be committed back to the State Security Hospital* until such time as this court would rule otherwise . . . ." *(Emphasis added.)*

The foregoing statutes direct that upon the district court hearing in a K.S.A. 22-3428a proceeding, the court initially is to determine whether the committed insanity acquittee will be likely to cause harm to self or others if the person is released or discharged. Which of the dispositional orders is to be made by the court follows from the likelihood of harm determination. In summary, these are the authorized and directed dispositions:

If the court finds by clear and convincing evidence the acquittee will not be likely to cause harm to self or others if discharged, the court <u>shall</u> order the acquittee discharged;

If the court does not find by clear and convincing evidence that the acquittee will not be likely to cause harm to self or others if discharged, the court *shall order either* (1) that the acquittee remain committed *or* (2) that he or she be conditionally released; and

If the court finds by clear and convincing evidence the acquittee will not be likely to cause harm to self or others if the acquittee continues to take prescribed medication or to receive periodic psychiatric or psychological treatment, the court <u>may</u> order the acquittee conditionally released.

Noel suggests that within subsection (5) of K.S.A. 1991 Supp. 22-3428 authority is granted for a district court order requiring his transfer from the State Security Hospital to "any state hospital." That is not quite so. In particular, that subsection concerns conditionally released patients and their fulfillment or modification of imposed conditions of release. Noel is not a conditionally released patient; he does not satisfy the threshold requirement for orders possibly available under K.S.A. 1991 Supp. 22-3428(5). That section patently contemplates its application to persons being processed for reentry into society as a conditionally released person and to conditionally released persons seeking modification of imposed conditions. Noel's suggestion that K.S.A. 1991 Supp. 22-3428a(3) empowers a district court to order transfer of an insanity acquittee committed to the State Security Hospital from that hospital to any state hospital is too strained for acceptance.

K.S.A. 1991 Supp. 22-3428(2) provides that "[w]henever it appears to the chief medical officer of the state security hospital

that a . . . committed [insanity acquittee] is not dangerous to other persons, the officer may transfer the person to any state hospital."

I am not directed to and I find no other statutory reference to inter-institution transfer of insanity acquittees operative prior to the amendment of K.S.A. 22-3428 by L. 1992, ch. 309, § 3, effective July 1, 1992. K.S.A. 22-3428, in effect when this case was heard and decided in the district court and the appeal herein was taken, did not refer to likelihood to cause harm to self and gave the chief medical officer, not the district court, the authority to determine danger to other persons and permissive authority to transfer.

In this case, the district court determined that Noel is a person who is likely to cause harm to self or others if discharged. Otherwise put, it was not determined that Noel is a person not likely to cause harm to self or others if discharged. Accordingly, the court was statutorily authorized and required to order *either* that Noel remain committed *or* that he be conditionally released.

As I see it, the district court was of the mistaken view that, upon its determination that Noel is a person likely to cause harm to self or others, it was required to order that Noel remain committed at the State Security Hospital. In fact, the previously referred-to statutory provisions afforded to the district court additional discretionary authority to order conditional release. Thus, I agree with my colleagues that this case must be remanded to the district court for further consideration and action with consideration given to the availability of conditional release as a possible disposition. Disposition by order of continued commitment at the state security hospital is not the single mandated disposition upon determination of likelihood to cause harm to self or others.

Although we have been requested to address the recently enacted amendments to K.S.A. 22-3428 appearing at L. 1992, ch. 309, § 3, effective July 1, 1992, those amendments do not have retroactive effect and present discussion of them produces only dicta. We should decline the request.

Further, it is inappropriate to now address *Foucha v. Louisiana*, 504 U.S. ___, 118 L. Ed. 2d 437, 112 S. Ct. 1780, (1992), decided May 18, 1992, only two weeks before oral argument in

the case before us. The district court has had no opportunity to consider *Foucha*. *Foucha's* holdings and their effect upon the case before us has not been briefed by the parties. Present discussion of *Foucha* produces only dicta. We should address *Foucha* another day.

It is a mistake for us to purport to engraft *Foucha* requirements onto the operative statutory law in effect when this case was heard and decided in the district court. Beyond that, we should not undertake judicial legislation. If the operative statutory law should be changed, that first should be accomplished by the legislature.

I concur with the majority in its decision to remand for further proceedings. The district court should be directed to reconsider its decision, with consideration given to the availability of authorized alternative disposition.