576

(856 P.2d 512)

No. 68,464

STATE OF KANSAS, *Appellee*, v. KENNETH L. FRYAR, *Appellant*.

Opinion filed July 16, 1993.

*Brad L. Keil*, of Wichita, for appellant.

*Mindy Beth Rogovin*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before ELLIOTT, P.J., LARSON, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

BRAZIL, J.: On September 26, 1990, Kenneth L. Fryar was sentenced to two concurrent terms of 4 to 20 years' imprisonment for his two convictions of indecent liberties with a child. Fryar timely appealed his convictions, which were affirmed by this court in an unpublished opinion, *State v. Fryar*, No. 66,104, filed January 24, 1992.

In March 1992, Fryar was evaluated by the Topeka Correctional Facility Reception and Diagnostic Unit (TCF), which recommended "probationary placement with continuation of outpatient

mental health counseling." The report also stated that "any favorable impressions currently gained by this examiner must be partially tempered by a lack of any type of supplemental documentation (PSI, etc.) to help validate or disconfirm (Fryar's) contentions."

On April 23, 1992, Judge Sanborn sent a letter to Leo Taylor, the warden of TCF, with copies to Fryar's defense counsel and the State's prosecuting attorney, which stated:

"In accordance with my telephone conversation with you today, I am forwarding to you the following:

1. Presentence Investigation-18th Judicial District;
2. County/District Attorneys Report;
3. Letter from Janice M. Beougher, M.S., Horizons Mental Health Center;
4. Letter to Shirley Mahan, Presentence Investigator, from the defendant's ex-wife; and
5. Psychological Evaluation from Sedgwick County Department of Mental Health, Bruce Nystrom, Ph.D., Chief Psychologist.

"I am requesting that Mr. Fryar be re-evaluated. I do not understand how your evaluation could have proceeded without the required information."

On May 15, 1992, TCF supplemented the original recommendation with the following comment:

"In light of new information received from the Eighteenth Judicial District Court, the evaluation team is inclined to change our recommendation to continued incarceration. Contributing factors include, primarily, the degree and severity of inmate Fryar's actions, previously undisclosed, denied, and/ or minimized; the associated impact and emotional damage suffered by the victim, previously glossed over and watered down; and the apparent manipulative and deceitful tendencies reflected, previously not fully identified given, mainly, only his self-report to rely upon."

On June 24, 1992, Fryar filed a motion to modify his sentences based upon the original favorable recommendation by TCF. At a hearing held July 2, 1992, Judge Sanborn denied the motion, stating:

"When I received [the TCF] report in its body, it was disclosed that it did not, they did not have the PSI and all they had was a tale told by Mr. Fryar. So I called Mr. Taylor and told them that I didn't see how they can make a report without the required information. And that information was supplied, and counsel were notified of that fact.

. . . .

". . . [T]he evaluation wasn't done according to procedure because those matters weren't there.

"I requested that he be reevaluated because, of course, there wasn't any evaluation based on information that should have been forwarded to the [TCF]. . . .

. . . .

"As for supplying supplemental information, those are all matters required by law to be supplied to [TCF], and they didn't have them. And they made an evaluation without having them.

. . . .

"I believe in giving people chance after chance. I don't believe in rewarding deceit. The motion is overruled.

. . . .

"Also considered all these presumptive matters. There's no reason that presumption could prevail either for probation or community corrections in the face of the facts of this case.

"I suppose it would make the Court of Appeals and Supreme Court's job easier if I recited in the record I considered very carefully the sentence at the time I did it. I was astounded at the [TCF] report when it didn't have required information. That's why I called and corresponded with Mr. Taylor.

"I reviewed all those statutory matters, the checklist. Knowing in that checklist that makes a statutory presumption based on generalities. Apply to this case. This is a particular case. Presumptions are just that. A thing you start out with and consider. A presumption disappears in the face of evidence. That's what presumptions are. I didn't overlook anything in the statute."

Following the denial of his motion for reconsideration, Fryar timely appeals.

Fryar argues Judge Sanborn contravened Fryar's due process rights in a manner violative of the separation of powers doctrine and violated Supreme Court Rule 601, Canon 3(A)(4) of the Code of Judicial Conduct (1992 Kan. Ct. R. Annot. 346), by the ex parte communication with Taylor and by the request that Fryar be reevaluated.

As stated above, the initial report from TCF contained the following language: "[A]ny favorable impressions currently gained by this examiner must be partially tempered by a lack of any type of supplemental documentation [PSI, etc.] to help validate or disconfirm [Fryar's] contentions."

K.S.A. 1992 Supp. 21-4605 reads as follows:

"(a)(1) Upon request of the attorney for the state or the counsel for the defendant, the judge shall make available to the attorney or counsel the presentence report, any report that may be received from the Topeka correctional facility or the state security hospital and other diagnostic reports and shall allow the attorney or counsel a reasonable time to review the

report before sentencing the defendant. Except as otherwise provided in this section, all these reports shall be part of the record but shall be sealed and opened only on order of the court.

. . . .

"(b) If a defendant is committed to the custody of the secretary of corrections, all reports under subsection (a)(1) shall be sent to the secretary of corrections and, in accordance with K.S.A. 75-5220, to the warden of the state correctional institution to which the defendant is conveyed."

In this case, the required information was not initially furnished to TCF and that lack of information was specifically pointed out by the examiner in his initial report. Judge Sanborn did not violate Fryar's right to due process by providing the supplemental documentation to the TCF staff.

Canon 3(A)(4) of the Code of Judicial Conduct states:

"A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and *except as authorized by law*, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." (Emphasis added.)

The supplemental documentation provided by Judge Sanborn was information that is authorized and should have been provided initially to TCF. Although the better practice would have been simply to provide this information by written correspondence with copy to counsel, Fryar has shown no prejudice as a result of Judge Sanborn's phone conversation with Warden Taylor, and we cannot find that that conversation was per se violative of Fryar's due process rights or Canon 3(A)(4) of the Code of Judicial Conduct.

Fryar next argues the trial court violated the language of K.S.A. 1992 Supp. 21-4603(4)(a) and (4)(b) in failing to follow the unequivocal recommendation of the diagnostic and reception staff of TCF that Fryar be given probationary placement. Fryar's crimes were committed no later than September 1, 1988. The version of 21-4603 requiring the court to follow the recommendation of the TCF staff first became effective on July 1, 1989. L. 1989, ch. 92, § 2. *State v. Sutherland*, 248 Kan. 96, 108, 804 P.2d 970 (1991), determined that the amended version of the statute would not be applied retroactively. The sentencing court here was not, therefore, required to follow the recommendation of the

TCF staff when considering Fryar's motion to modify his sentence.

In any event, having found that it was proper for Judge Sanborn to provide the supplemental documentation, it necessarily follows that the supplemental report of May 15, 1992, became the operative report, and the recommendation contained therein was followed by Judge Sanborn.

Affirmed.