IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,394

STATE OF KANSAS,
*Appellee*,

v.

ISAAC D. WILLIAMS JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

Appellate courts review sufficiency of evidence claims in a criminal case to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In making this determination, appellate courts view the evidence in the light most favorable to the State, which means the court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.

2.

Inconsistent jury verdicts are not unconstitutional; they can simply be the product of a jury's mistake, compromise, or lenity and should not necessarily be interpreted as a windfall to the State at a defendant's expense. But relief may be appropriate where a guilty verdict on one count logically excludes a finding of guilt on the other—in other words, where the verdicts are mutually exclusive.

3.

Mutually exclusive verdicts include: (1) those that are a legal impossibility, such as guilty verdicts on both a greater and its lesser included offense and (2) those that purport to establish a defendant's guilt for two separate and distinct criminal offenses, the

nature of which are such that guilt of one necessarily excludes guilt of the other—that is, when a conviction as to one of the crimes negates an element of the other.

4.

The elements of aggravated burglary under K.S.A. 2011 Supp. 21-5807(b) and domestic battery under K.S.A. 2011 Supp. 21-5414 do not negate each other.

5.

An instruction that includes a factual determination made by the district court invades the province of the jury as the fact-finder and violates a defendant's rights to have the jury determine his or her guilt or innocence.

6.

A jury instruction stating that the State must prove a defendant used a deadly weapon and informing the jury of the object that the State has alleged to be the deadly weapon by saying, "used a deadly weapon, a baseball bat," does not invade the province of the jury.

7.

Assault and battery are lesser included offenses of aggravated assault and aggravated battery, respectively. Thus, if sufficient evidence of all of the elements of the greater offense has been presented by the State, then evidence of the elements of the lesser included offense has necessarily been presented. Accordingly, an instruction on the lesser included offense is legally and factually appropriate and should be given by the district court. But when a defendant failed to object during the trial to the district court's failure to give the lesser included offense instruction, the defendant must demonstrate that the failure was clearly erroneous by firmly convincing the appellate court that the giving of the instruction would have made a difference in the verdict. In a case with

2

overwhelming evidence of the elements of the greater offenses, the district court's failure to give lesser included offense instructions was not clearly erroneous.

8.

Kansas' aggravated battery statute, K.S.A. 2011 Supp. 21-5413(b)(1)(B), requires the battery be one where great bodily harm can be inflicted. That requirement is not unconstitutionally vague.

9.

In conducting a cumulative error analysis, an appellate court aggregates all errors and, even though those errors would individually be considered harmless, analyzes whether their cumulative effect on the outcome of the trial is such that collectively they cannot be determined to be harmless. If any of the errors being aggregated are constitutional in nature, the cumulative error must be harmless beyond a reasonable doubt. In making the assessment of whether the cumulative errors are harmless, an appellate court examines the errors in the context of the record as a whole considering how the district court dealt with the errors as they arose (including the efficacy, or lack of efficacy, of any remedial efforts); the nature and number of errors committed and their interrelationship, if any; and the strength of the evidence.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 4, 2015. Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed November 30, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Isaac D. Williams Jr. raises six challenges to his convictions for aggravated burglary, aggravated battery, aggravated assault, and domestic battery. We reject his challenges and hold:

1.  Sufficient evidence supports Williams' aggravated burglary conviction because, when we view the record in the light most favorable to the State, it contains sufficient evidence for a rational fact-finder to conclude beyond a reasonable doubt that Williams entered the victim's dwelling without authority;

2. Williams' convictions for aggravated burglary and domestic battery are not mutually exclusive or logically inconsistent because the elements of one offense do not nullify those of the other and the jury could have been convinced beyond a reasonable doubt that Williams lacked authority to enter the victim's home—a necessary element of aggravated burglary—while also being convinced beyond a reasonable doubt that he had committed battery against someone with whom he was living or with whom he had previously lived;

3. The district court did not invade the province of the jury when it instructed the jury that the State had to prove Williams committed aggravated assault by using "a deadly weapon, a baseball bat" because the instructions, when read as a whole, left for the jury's consideration whether the bat was calculated or likely to produce death or serious injury;

4

4. Under the facts of this case, the district court erred by failing to instruct on assault as a lesser included offense of aggravated assault and on battery as a lesser included offense of aggravated battery, but neither error was clear error requiring reversal of Williams' aggravated assault or aggravated battery convictions;

5. Kansas' aggravated battery statute, K.S.A. 2011 Supp. 21-5413(b)(1)(B), requires the battery be one where great bodily harm "can be inflicted," and that requirement is not unconstitutionally vague; and

6. Cumulative error did not deprive Williams of a fair trial.

FACTS AND PROCEDURAL HISTORY

On July 24, 2011, Williams called Tanya R. Robinson and told her he planned to come to her residence after work. Robinson discouraged Williams from coming over, and an argument ensued. Despite Robinson's discouragement, Williams showed up at Robinson's home. He knocked on the door, but Robinson did not answer. He continued knocking for "a long period of time." Robinson finally went to the door, but she did not let Williams enter. After a verbal exchange, Williams walked away and Robinson locked the door. Williams soon returned and began pounding on the door. Robinson was talking on the phone with a friend, who could hear Williams' pounding. Williams then broke a glass pane on the door and forced it open.

Williams entered the house, grabbed Robinson, strangled her, and "head-butted" her by hitting his head on her forehead. He then picked up a baseball bat she kept by the front door for protection. He held the bat above his head and threatened to hit Robinson

5

and damage her possessions. Robinson fled through the front door. Robinson's friend, who had remained on the phone, called 911.

Police soon arrived. They observed marks on Robinson's neck consistent with strangulation. Officers questioned Robinson about her relationship with Williams. She said they were dating and Williams sometimes spent the night. Williams told the officers he had lived with Robinson for about two weeks. But a search of the home revealed items consistent only with an overnight stay—a shaving kit and one change of clothes. Williams told officers he received mail at a different address.

Witnesses testified at trial that Williams and Robinson had purchased furniture and appliances together, and Williams had placed the electricity and water services at the address in his name. These utilities were turned on about two weeks before the crimes were committed, which coincides with Williams' statements to the police that he had lived with Robinson for two weeks.

The State charged Williams with aggravated burglary, aggravated battery, aggravated assault, domestic battery, and criminal trespass. The jury convicted him of all charges except criminal trespass, and the district court sentenced him to 142 months' imprisonment. The Court of Appeals affirmed his convictions. See *State v. Williams*, No. 108,394, 2015 WL 8174299 (Kan. App. 2015) (unpublished opinion). We granted Williams' petition for review. Our jurisdiction is proper under K.S.A. 2017 Supp. 20-3018(b) (petition for review of Court of Appeals decision).

ANALYSIS

Williams raises seven issues. We have reordered his issues and combined two lesser included offense issues for our analysis. As reordered and combined, Williams

6

argues: (1) The State failed to present sufficient evidence to support his aggravated burglary conviction; (2) his convictions for aggravated burglary and domestic battery are mutually exclusive; (3) the district court erroneously instructed the jury on aggravated assault when it told the jury the State had to prove Williams used "a deadly weapon, a baseball bat"; (4) the district court erred in failing to instruct the jury on the lesser included offenses of assault and battery; (5) Kansas' aggravated battery statute, K.S.A. 2011 Supp. 21-5413(b)(1)(B), is unconstitutionally vague; and (6) cumulative error deprived him of a fair trial. We reject each argument.

1.      *Sufficient evidence supports Williams' conviction for aggravated burglary.*

Williams argues there was insufficient evidence to support his aggravated burglary conviction. Our standard for reviewing this claim is well-settled: Appellate courts review sufficiency claims in a criminal case to determine whether "'a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Dunn*, 304 Kan. 773, 821, 375 P.3d 332 (2016). In making this determination, appellate courts view the evidence in the light most favorable to the State, which means the court "'does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" 304 Kan. at 822.

We apply that standard to Williams' argument that the State failed to prove the offense of aggravated burglary. Aggravated burglary is defined as "without authority, entering into or remaining within any building . . . in which there is a human being with intent to commit a felony, theft or sexual battery therein." K.S.A. 2011 Supp. 21-5807(b). Williams argues the State failed to prove he lacked authority to enter the residence because he was living or had previously lived there and previously even had a key. Given these facts, he argues the State had to prove he had established a new residence in order to prove he no longer had the authority to enter the residence. He asserts it was not

7

enough to show Robinson did not want him to enter the residence and had taken away his key. To support his argument he states that "the authority to enter is a property right tied to the status of one's residence." He then argues "the state's laws of residence take on a legal meaning" and, in Kansas, a change in residency requires "'not only physical or bodily presence in the new location, but also the intention to abandon the old residence and adopt another in the new location.' K.S.A. 77-201."

Williams appears to quote from K.S.A. 77-201 to support his argument. But that statute does not include the quoted language. K.S.A. 77-201 relates to the construction of statutes and includes definitions of terms often used throughout various statutory codes. It defines "[r]esidence" to mean "the place which is adopted by a person as the person's place of habitation and to which, whenever the person is absent, the person has the intention of returning." K.S.A. 77-201, *Twenty-third.* The statute also provides some guidance for determining residence: "When a person eats at one place and sleeps at another, the place where the person sleeps shall be considered the person's residence." K.S.A. 77-201, *Twenty-third*. This statute does not, on its face, support Williams' contention that the State had to prove his intent to abandon Robinson's home as his residence and to adopt a new residence. And he cites no authority for his assertion that "the authority to enter is a property right tied to the status of one's residence." Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. See *State v. Murray,* 302 Kan. 478, 486, 353 P.3d 1158 (2015).

More significantly, the aggravated burglary statute does not require the State to prove (or disprove) a burglar's residence. Instead, the State needs to prove the burglar lacked authority to enter or remain in the residence. See K.S.A. 2011 Supp. 21-5807(b). As the Court of Appeals stated: "The State only needs to present enough evidence to prove each element of the crime, as prescribed by statute." *Williams*, 2015 WL 8174299,

8

at *4 (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 [1970]; *State v. Rupert*, 247 Kan. 512, 514-15, 802 P.2d 511 [1990]). Thus, Williams "requires too much." 2015 WL 8174299, at *4.

The Court of Appeals also pointed out that this court has not stated a test for determining whether a person enters or remains in a home "without authority," as that phrase is used in the aggravated burglary statute. 2015 WL 8174299, at *5. But such a test is hard to devise because the determination is fact-specific.

Generally, social guests, even those sleeping at the residence, do not have property rights in the residence. See *State v. Talkington*, 301 Kan. 453, 477, 345 P.3d 258 (2015) (recognizing that social guests do not have property rights that can serve as a basis for standing to object to a search). In the aggravated burglary context, this is significant because someone with a property interest—as an owner or lessee, for example—has the right to exclude others from the property. See Black's Law Dictionary 1410 (10th ed. 2014) (defining "property" as: "Collectively, the rights in a valued resource such as land, chattel, or an intangible. It is common to describe property as a 'bundle of rights.' These rights include the right to possess and use, *the right to exclude*, and the right to transfer."). But the one with property rights might grant permission for the defendant to enter or remain on the property, in which case the guest has authority and the State fails to prove an aggravated burglary. See *State v. Franklin*, 280 Kan. 337, 345-46, 121 P.3d 447 (2005) (defendant testified she had permission to enter, stored her car in the home's garage, and kept clothes in the home); *State v. Harper*, 246 Kan. 14, 19-20, 785 P.2d 1341 (1990) (defendant had been given keys to the building).

The State presents a closer question when both the defendant and the victim have a property interest. There, under the facts of some cases, we have held the State did not prove a lack of authority. See *State v. Vasquez*, 287 Kan. 40, 59-60, 194 P.3d 563 (2008)

9

(State failed to show defendant lacked authority to enter his home when wife had not served a restraining order).

Where, as here, the State did not present direct evidence about the property interests of the two parties, a close question exists. Evidence established that Williams might have a property interest in some furnishings and appliances, and he was paying some utilities. But those facts do not establish that he had a property right in the residence. Although we cannot look to direct evidence of Williams' property right in the residence, there is circumstantial evidence that he lacked authority to enter the property. A forcible entry has been one circumstance Kansas appellate courts have viewed as a circumstances showing a defendant did not have authority to enter. See *State v. Birth*, 37 Kan. App. 2d 753, 776-77, 158 P.3d 345, *rev. denied* 284 Kan. 947 (2007) (victim's testimony that the defendant had pushed his way into the home sufficient to uphold aggravated burglary conviction even though the defendant testified he had been allowed in); see also *State v. King*, 308 Kan. 16, 28, 417 P.3d 1073 (2018) ("'even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom.'") (quoting *State v. Robinson*, 306 Kan. 1012, 1023, 399 P.3d 194 [2017]).

Here, the State presented circumstantial evidence that Robinson had to give permission in order for Williams to enter and that Williams recognized or acquiesced in her right to exclude him. Robinson testified that Williams did not live with her and she had taken back his key a few days before the incident. This suggests she had the right to give and revoke permission. Williams called and talked about dropping by, which suggests he did not perceive he had a right to demand access to the residence. And Robinson asked Williams not to come over on the night of the incident and refused to let him in when he knocked on her door. Significantly, Williams did not try to enter, even though the door was initially unlocked. Once Robinson answered the door, she told

10

Williams to leave and then locked the door. When Williams returned, he broke the door open to gain entry—evidently he did not have a key.

Based on this evidence, a rational fact-finder could conclude beyond a reasonable doubt that Williams entered the house without authority.

2.      *Williams' convictions for aggravated burglary and domestic battery are not mutually exclusive.*

Williams also argues the jury reached inconsistent and mutually exclusive verdicts when it convicted him of both aggravated burglary and domestic battery. He acknowledges aggravated burglary and domestic battery "are not *per se* mutually exclusive." But he argues the convictions are mutually exclusive under the facts of this case. On the one hand, he points out that to prove aggravated burglary, the State had to prove he entered Robinson's residence without authority. On the other hand, to prove domestic battery the State had to prove he lived with or had previously lived with Robinson. He argues these factual elements mean his aggravated burglary conviction directly conflicts with his domestic battery conviction. His factual arguments overlap those he made in the prior issue.

As to his legal argument, Williams acknowledges that "[t]he United State Supreme Court has repeatedly found that inconsistent jury verdicts are not unconstitutional." Indeed, in *United States v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984), the United States Supreme Court reaffirmed its long-standing holding that "'[c]onsistency in the verdict is not necessary.'" *Powell*, 469 U.S. at 62 (quoting *Dunn v. United States*, 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356 [1932]). Applying that holding, the Court held a jury's acquittal of a defendant on charges for conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute did not require reversal of her convictions of using a telephone to facilitate those offenses. The Court

11

reasoned, in part: "'The most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" 469 U.S. at 64-65 (quoting *Dunn*, 284 U.S. at 393). The Court pointed out that inconsistent verdicts could be the product of a jury's "mistake, compromise, or lenity" and "should not necessarily be interpreted as a windfall to the Government at the defendant's expense." 469 U.S. at 65.

Williams relies on one sentence from *Powell* to support his argument. That sentence, found in a footnote, states: "Nothing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other." 469 U.S. at 69 n.8. Williams argues this means mutually exclusive verdicts cannot stand. In Williams' petition for review, he cites this court's decision in *State v. Hernandez*, 294 Kan. 200, 273 P.3d 774 (2012), in which this court found two convictions were legally inconsistent.

In *Hernandez*, the State had charged the defendant with aggravated indecent liberties with a child. The district court instructed the jury that if it did not find the defendant guilty of that offense, it should consider whether the defendant had committed attempted aggravated indecent liberties with a child. The jury returned guilty verdicts for both the charged crime and its lesser included offense of an attempt to commit the crime. The *Hernandez* court noted several other cases where this court had held a defendant could not be convicted of both the greater and lesser crime under Kansas law. *Hernandez*, 294 Kan. at 204-05. The inconsistent verdicts in *Hernandez* presented "a legal impossibility." 294 Kan. 200, Syl. ¶ 1, 207.

Beyond the situation of a verdict on both the offense and an attempt to commit the offense, this court has not been called upon to explore fully the meaning of *Powell*'s footnote 8. Before the Court of Appeals, Williams argued the court should be guided by

12

the North Carolina Supreme Court's application of the footnote, citing *State v. Mumford*, 364 N.C. 394, 400-01, 699 S.E.2d 911 (2010). On review, however, Williams argues *Hernandez* rather than *Mumford*.

Here, however, Williams does not present a *Hernandez* or *Mumford* issue because his argument does not relate to convictions for a charged offense and its lesser offense. So we must look beyond *Hernandez* for guidance, and the North Carolina Supreme Court's *Mumford* decision points us to such a path. There, the court contrasted the lesser included offense situation with the one presented in *State v. Speckman*, 326 N.C. 576, 580, 391 S.E.2d 165 (1990).

In *Speckman*, the North Carolina Supreme Court examined the elements of the crimes of conviction to determine whether the jury's verdicts were mutually exclusive. The court noted that North Carolina law defines embezzlement as obtaining property lawfully and then converting it. But a conviction of false pretenses requires the property be obtained unlawfully. "[S]ince property cannot be obtained simultaneously pursuant to both lawful and unlawful means, guilt of either embezzlement or false pretenses necessarily excludes guilt of the other." 326 N.C. at 578.

Other courts follow the same elements-comparison approach as North Carolina. For example, the Court of Appeals quoted *United States v. Maury*, 695 F.3d 227, 266 (3d Cir. 2012): "[L]egally impossible verdicts only occur when 'a conviction as to one of the crimes *must* negate an element of the other.' (Emphasis added.)" *Williams*, 2015 WL 8174299, at *3 (quoting *Maury*, 695 F.3d at 266). And the Court of Appeals concluded this approach best fits the arguments presented by Williams. 2015 WL 8174299, at *3 (citing additional cases from other jurisdictions).

13

The Court of Appeals then correctly concluded the elements of the two crimes of aggravated burglary and domestic battery do not negate each other. 2015 WL 8174299, at *4. As we have discussed, aggravated burglary is defined as "without authority, entering into or remaining within any building . . . in which there is a human being with intent to commit a felony, theft or sexual battery therein." K.S.A. 2011 Supp. 21-5807(b). In contrast, the crime of domestic battery does not have any elements about authority to enter or remain in a dwelling. Instead, it relates to a battery against a family or household member and defines those relationships as being past or present. K.S.A. 2011 Supp. 21-5414(c)(1) (defining family or household member to include "persons who are presently residing together *or who have resided together in the past*." [Emphasis added.]).

The Court of Appeals determined the definition of household member gives the jury the option of finding either:  (1) the defendant and victim were residing together at the time of the offense; or (2) the defendant and victim had previously resided together but were not residing together at the time of the crime. Because of the second option, it was legally possible for Williams to enter Robinson's home without authority and to commit domestic battery. 2015 WL 8174299, at *4. We hold that the elements approach presents a valid method for determining if verdicts are mutually exclusive.

Williams, however, argues the Court of Appeals erred by applying an elements test as the sole test. See 2015 WL 8174299, at *3. He asks us to adopt a broader reading of the *Powell* Court's footnote and its reference to mutually exclusive verdicts. We need not burden this decision with a discussion of that possibility because the facts do not present us with mutually exclusive verdicts. As we have discussed, the State presented evidence that Williams lacked authority to enter the residence and, while he had lived there with Robinson, circumstantial evidence supports a conclusion she had revoked his authority to enter the property. Williams essentially asks us to reweigh facts and to even

14

add facts or make inferences the evidence does not support. We, of course, cannot do any of those things. See *State v. Betancourt*, 301 Kan. 282, 290, 342 P.3d 916 (2015).

We conclude Williams has not established mutually exclusive verdicts.

3.       *The district court did not err in setting out the State's claim that Williams used a baseball bat as a deadly weapon.*

Williams argues the district court erroneously instructed the jury on aggravated assault. The State charged Williams with committing aggravated assault by using "a deadly weapon, to wit:  baseball bat." At trial, the district court instructed the jury on aggravated assault by stating, in relevant part:

"In Count 3, the defendant is charged with the crime of aggravated assault. . . .

"To establish this charge, each of the following claims must be proved:

"1. That the defendant intentionally placed [Robinson] in reasonable apprehension of immediate bodily harm;

"2. That the defendant *used a deadly weapon, a baseball bat* [emphasis added];

. . . .

"As used in these instructions, the term *Deadly Weapon* includes any instrument which, from the manner in which it is used, is calculated or likely to produce death or serious injury."

Williams argues the district court, by using the language of "the defendant used a deadly weapon, a baseball bat," "mandated that *if* the jury found [he] had used a baseball bat, he used a deadly weapon." The Court of Appeals, citing *State v. Sutherland*, 248

15

Kan. 96, 804 P.2d 970 (1991), held the specific instruction, as well as the instructions as a whole, did not tell the jury a baseball bat was per se a deadly weapon. But it cautioned, "Trial courts should be careful when using a sentence constructed like this one." 2015 WL 8174299, at *8.

A multi-step process applies to our review of claimed errors relating to jury instructions. We must first decide whether the issue has been preserved. Second, we analyze whether an error occurred. This requires a determination of whether the instruction was legally and factually appropriate. We exercise unlimited review of those questions. Next, if we find error, we conduct a "reversibility inquiry." The standard for that inquiry depends on whether Williams objected to the instruction during the trial. *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4, 5, 286 P.3d 195 (2012). Because Williams did not object, we apply the clear error standard mandated by K.S.A. 2017 Supp. 22-3414(3). Under that standard, an appellate court assesses whether it is "firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." 295 Kan. at 516. Williams has the burden to establish reversibility, and in examining whether he has met that burden we make a de novo determination based on the entire record. 295 Kan. at 516.

We first note that the parties have not discussed whether the judge even needed to include the reference to the baseball bat in the instruction, so that question is not before us. Instead, Williams focuses on the wording and sentence structure of the instruction requiring the State to prove "the defendant used a deadly weapon, a baseball bat." He argues the wording is legally inappropriate because, as this court said in *State v. Stieben*, "[a]n instruction that includes a factual determination made by the trial court 'invades the province of the jury as the factfinder' and violates the defendant's rights to have the jury determine his or her guilt or innocence." 292 Kan. 533, 537, 256 P.3d 796 (2011)

(quoting *State v. Brice*, 276 Kan. 758, 772, 80 P.3d 1113 [2003]). The question here is whether the instruction made a factual determination.

As the Court of Appeals pointed out, this court's decision in *Sutherland*, 248 Kan. 96, addressed a similar question and suggests that the instruction here did not determine an issue of fact for the jury. The *Sutherland* jury instruction stated the jury had to find "'Sutherland was armed with a deadly weapon, to wit: a knife.'" 248 Kan. at 99. This court held the words "to wit: a knife" did not instruct the jury that a knife was a deadly weapon. Instead, they explained that the State had to prove a knife was a deadly weapon. 248 Kan. at 100-01.

The *Sutherland* court distinguished that wording from an instruction in *State v. Colbert*, 244 Kan. 422, 425, 427, 769 P.2d 1168 (1989), where this court held the district court invaded the province of the jury by instructing that "'a firearm is a deadly weapon as a matter of law.'" 244 Kan. at 427. The *Sutherland* court explained:

> "There, the instruction expressly directed the jury that a gun was a deadly weapon. Here, the jury was instructed that an element of the crime the jury had to find was that [the defendant or an accomplice] 'was armed with a deadly weapon, to-wit: a knife.' This instruction places the burden on the State to prove the knife is a deadly weapon and does not instruct the jury that it is a deadly weapon." 248 Kan. at 100-01.

Later, faced with an instruction much like the one in *Colbert*, this court in *Brice* once again held a district court had invaded the province of a jury. There, the State had charged the defendant with aggravated battery after he fired a gun and shot the victim. The victim's treating physician testified the bullet did not hit any bones, major arteries, veins, or nerves and caused "'a through and through injury.'" *Brice*, 276 Kan. at 760. The district court instructed the jury that the State had to prove the defendant had "'intentionally caused great bodily harm.'" 276 Kan. at 761. In a separate instruction, the

17

court told the jury: "'As used in these instructions, the term Great Bodily Harm means, a "through and through bullet wound."'" 276 Kan. at 762. These instructions, according to the *Brice* court, had "in effect directed a verdict on an essential element of the aggravated battery charge." 276 Kan. at 771. Although *Brice* did not cite either *Colbert* or *Sutherland*, its reasoning and the wording of the instruction parallels that in *Colbert*. As opposed to being an instruction that told the jury what the State had to prove—as in *Sutherland*—the instructions in *Colbert* and *Brice* told the jury what the State had established.

Most recently, in *State v. Sisson*, 302 Kan. 123, 130, 351 P.3d 1235 (2015), this court considered whether a jury instruction that defined "drug paraphernalia" invaded the jury's province. That instruction read:

"'Drug paraphernalia' means all equipment, and materials of any kind which are used or primarily intended or designed for use in preparing, packaging, repackaging a controlled substance.
"'Drug paraphernalia' includes:
(1) scales." 302 Kan. at 129.

Another instruction told the jury the State had to prove the defendant intentionally possessed the scales with the intent to use drug paraphernalia to distribute cocaine. A third instruction listed factors for the jury to consider in determining whether an object is drug paraphernalia.

The *Sisson* court pointed to the general rule that jury instructions must be considered as a whole, with no instruction considered in isolation. 302 Kan. at 130-31. Reading the instructions in their entirety, the *Sisson* court held the district court did not invade the province of the jury by instructing that drug paraphernalia includes scales. Instead, that instruction "simply defined which objects the State was including in its

18

accusation of possessing drug paraphernalia" and "the instructions as a whole . . . informed the jury that it had to do more than simply find that [the defendant] was the possessor of scales; it had to find that he was using or intended to use the scale as paraphernalia for use in distributing controlled substances." 302 Kan. at 132.

The *Sutherland* and *Sisson* decisions inform our holding. Here, the district court did not explicitly state a baseball bat is a deadly weapon. Rather, it stated what the State had to prove. Using the wording "a deadly weapon, a baseball bat" does not differ in any material way from the wording of the instruction in *Sutherland*, even though the instruction here did not use "to wit" as had the *Sutherland* instruction. As Black's Law Dictionary 1719 (10th ed. 2014) explains, "to wit" is "[a]rchaic" and means: "That is to say; namely." Similarly, as the Court of Appeals noted, here, the district court omitted "to wit" and instead "use[d] what grammarians call an appositive, a noun (often with modifiers) set beside another noun to explain or identify it." 2015 WL 8174299, at *8. The sentence structure essentially said, namely, a baseball bat. Thus, as in *Sutherland*, the instruction merely told the jury what the State had to prove. This conclusion finds even more support given the difference in the instruction at issue from the one in *Sutherland*.

Specifically, the instruction in *Sutherland* did not provide a separate definition of deadly weapon. But here, the district court gave one and did so in the same instruction. As the Court of Appeals observed, this definition would not "have been needed had the [district] court intended to tell the jury that the baseball bat had to be considered a deadly weapon in this case." 2015 WL 8174299 at *8. This reasoning is consistent with our holding in *Sisson*, 302 Kan. at 132 ("We credit juries with an ability to understand words in context.").

Likewise, this reasoning is consistent with the United States Supreme Court's decision in *Carella v. California*, 491 U.S. 263, 268, 109 S. Ct. 2419, 105 L. Ed. 2d 218

19

(1989). There, the Court emphasized that "the key issue is whether a presumption set out in a jury instruction is mandatory, 'that is, whether the specific instruction, both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts.' 491 U.S. at 265." *Sisson*, 302 Kan. at 133 (Biles, J., concurring).

*State v. Ingham*, No. 111,444, 308 Kan. ___, ___ P.3d ___ (No. 111,444, this day decided), provides an example of instructions, when read as a whole, that could be understood by reasonable jurors to require them to find a presumed fact if the State proved certain predicate facts. In *Ingham*, the defendant was charged with possession or use of a commercial explosive. The elements instruction first informed the jury the State had to prove "'Ingham intentionally possessed, manufactured or transported an improvised explosive device, a commercial explosive.'" 308 Kan. at ___, slip op. at 10. Like the instruction in this case, this sentence merely informed the jury what the State had to prove. But the instruction also stated: "'It is not a defense to this crime that Daron Ingham did not know an improvised explosive device *was* a commercial explosive.'" (Emphasis added.) 308 Kan. at ___, slip op. at 10. By telling the jury "'an improvised explosive device was a commercial explosive'" the instruction moved past informing the jury what the State needed to prove and informed the jury that the State had proved an improvised explosive device was a commercial explosive. 308 Kan. at ___, slip op. at 14.

Unlike the *Ingham* instructions, nothing in Williams' instructions told the jury what the State had proven. Instead, Williams' jury had to consider whether the manner in which the baseball bat had been "used [was] calculated or likely to produce death or serious injury." Only if the jury found those things would it consider the baseball bat a deadly weapon. See *Sutherland*, 248 Kan. at 100 (An ordinary object can be a dangerous weapon if the user intends to convince the victim it is a dangerous weapon and the victim believes it is.). Likewise, the jury in *Sisson* had to determine the defendant possessed the

20

scale with the intent to use it as paraphernalia in distributing controlled substances. Because the jury instruction explained what the State had alleged the deadly weapon used by Williams to be—a baseball bat—and accurately explained what the jury had to find in order to determine it was used as a deadly weapon, it did not direct a factual finding in favor of the State and was not erroneous.

Although we find no error, we agree with the Court of Appeals that district courts should be cautious in constructing this type of instruction. Specifically, we see how the use of an appositive without a separate definition could potentially run afoul of *Carella*. In addition, the instruction could be worded more clearly. For example, the court could set out the elements without delineating the State's allegation regarding the nature or description of the weapon. After listing the elements, the instruction could then state: The State alleges a [type of deadly weapon alleged (here, a baseball bat)] was used as a deadly weapon. You must determine whether [type of deadly weapon alleged], from the manner in which it was used, was calculated or likely to produce death or serious injury. An object can be a deadly weapon if the user intended to convince a person that it is a deadly weapon and that person reasonably believed it to be a deadly weapon.

While such an alternative construction might be clearer, that does not mean the instruction here was erroneous. The complained-of language merely told the jury the State must prove Williams used a deadly weapon and informed the jury of the specific object the State alleged was the deadly weapon—the baseball bat. The definition that followed those statements instructed the jury on the test to apply when judging if the State had met its burden of proving that Williams had used the baseball bat as a deadly weapon. The instruction did not invade the province of the jury, and we hold the district court did not err.

4.    *The district court erred in failing to instruct on lesser included offenses but did not commit clear error.*

Williams argues the district court erred in failing to instruct the jury on assault and battery as lesser included offenses of aggravated assault and aggravated battery, respectively. He acknowledges he did not object to the district court's jury instructions or suggest any additional instructions. He also acknowledges his claim would ordinarily be subject to review for clear error. But he argues this court should apply a higher standard of constitutional error because the failure to give the instructions implicates constitutional rights under both the United States and Kansas Constitutions.

Williams does not fully explain his argument about the United States Constitution and fails to support it with any authority. We consider the point abandoned. *McCain Foods USA, Inc. v. Central Processors, Inc*., 275 Kan. 1, 15, 61 P.3d 68 (2002) (a party waives or abandons an issue by not supporting it with authority).

As to Williams' argument under the Kansas Constitution, he relies on a Mississippi Supreme Court opinion, *Harrell v. State*, 134 So. 3d 266 (Miss. 2014). *Harrell* interpreted and applied Section 31 of the Mississippi Constitution. That provision, like Section 5 of the Kansas Constitution Bill of Rights, provides that the right to a trial by jury is "inviolate." The Mississippi Supreme Court held that "it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element." 134 So. 3d at 275. The Court of Appeals discussed Williams' reliance on *Harrell* and correctly found it misplaced. 2015 WL 8174299, at *12.

As the Court of Appeals pointed out, the trial court in *Harrell* instructed the jury on capital murder but failed to instruct it on the underlying felony. Because the trial court did not instruct the jury on the elements of the underlying felony, it could not have

22

determined whether the defendant was guilty of every element of the crime charged, thus violating the defendant's constitutional right to a jury trial. *Harrell*, 134 So. 3d at 272-73, 275. In contrast, here, the district court instructed the jury on the elements of the crimes the State had charged. And the jury found the State had established all of those elements beyond a reasonable doubt. The fact the district court did not instruct the jury on lesser included offenses of those crimes, the offenses the State *could* have charged, did not prevent the jury from determining the necessary elements of the offenses the State *actually* charged. *Harrell* is distinguishable and unpersuasive under these facts, and Williams' right to a jury trial under the Kansas Constitution was not violated.

Williams alternatively argues the district court committed clear error. As we have noted in the previous issue, we must first determine whether there was error by determining if the instructions for assault and battery would have been both legally and factually appropriate. Then, we will determine whether that error was clear. *Williams*, 295 Kan. 506, Syl. ¶ 4.

We first consider the legal appropriateness of instructing the jury on assault and battery as lesser included offenses. As Williams points out, because assault and battery are lesser included offenses of aggravated assault and aggravated battery, respectively, they are legally appropriate. See K.S.A. 2011 Supp. 21-5109(b) ("A lesser included crime is: [1] A lesser degree of the same crime."); *State v. Simmons*, 295 Kan. 171, 175, 177-78, 283 P.3d 212 (2012) (battery a lesser included offense of various forms of aggravated battery); *State v. Nelson*, 224 Kan. 95, 97, 577 P.2d 1178 (1978) (assault a lesser included offense of aggravated assault).

As to factual appropriateness, our standard was set out in *State v. Haberlein*, 296 Kan. 195, 290 P.3d 640 (2012). There, the issue was whether the defendant, charged with first-degree premeditated murder, was entitled to an instruction on the lesser

included crime of second-degree intentional murder. The issue turned on the element of premeditation. The court set out the threshold for the giving of a lesser included offense instruction:

> "While the evidence of premeditation in this case was extremely strong, there also was at least some evidence of each of the other elements of first-degree premeditated murder, and these elements are identical to the elements of second-degree intentional murder. Thus, at least in theory, the jury could have chosen to convict [the defendant] of second-degree intentional murder without having its verdict subject to reversal for insufficient evidence. This means the instruction was factually supported." 296 Kan. at 204.

Accord, e.g., *State v. McLinn*, 307 Kan. 307, 325, 409 P.3d 1 (2018).

Here, based on the evidence at trial, a jury could have convicted Williams of assault and battery—the evidence would have been sufficient. Thus, the district court should have instructed the jury on assault and battery as lesser included offenses.

Even though error occurred, because Williams did not object to the lack of the instructions during the trial he must establish clear error by firmly convincing us that the jury would have reached a different verdict had the instruction error not occurred. *Williams*, 295 Kan. at 516. To assess whether he has done so, we begin by looking at the differences between the charged crimes and the lesser included offenses.

The State charged Williams with aggravated battery under K.S.A. 2011 Supp. 21-5413(b)(1)(B). Under that provision, the district court instructed the jury that the State had to prove Williams "intentionally caused bodily harm to Tanya R. Robinson, in a manner whereby great bodily harm, disfigurement or death can be inflicted." Virtually undisputed evidence established that charge. Robinson testified that Williams choked her, and the responding police officers observed marks on her neck consistent with

24

strangulation. Strangulation can result in great bodily harm or death, and given the physical evidence, we are not firmly convinced the jury would have convicted Williams of battery.

As for the charge of aggravated assault, the State charged that Williams knowingly placed Robinson "in reasonable apprehension of immediate bodily harm, with a deadly weapon, to wit: baseball bat" under K.S.A. 2011 Supp. 21-5412. The difference between this charge of aggravated assault and assault centers on whether Williams used a deadly weapon. Thus, Williams must firmly convince this court the jury would have concluded the baseball bat was not a deadly weapon if instructed on the lesser included offenses. He argues a baseball bat is not "a deadly weapon per se; it depends entirely on how it is used, as evaluated by the jury." He also contends the evidence about the baseball bat "was not so overwhelming as to *only* result in a conclusion that it had been used as a deadly weapon." We disagree. The evidence shows he had already strangled Robinson and then hit her on the head. When he picked up the bat, raised it in the air, and threatened her, he escalated the potential for great bodily harm, disfigurement, and even death.

Under these facts, Williams does not firmly convince us the jury would have reached a different verdict. Williams has failed to establish reversible error.

5.     *K.S.A. 2011 Supp. 21-5413(b)(1)(B) is not unconstitutionally vague.*

As we have stated, K.S.A. 2011 Supp. 21-5413(b)(1)(B) defines aggravated battery as "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Williams argues the words "can be inflicted" render the statute unconstitutionally vague.

The United States Supreme Court has explained how vague laws violate the basic principle of due process:

"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).

This court and the United States Supreme Court have emphasized, however, that the Constitution does not require "impossible standards," but rather statutory language that "'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices,'" and no more. *Hearn v. City of Overland Park*, 244 Kan. 638, 640-41, 772 P.2d 758 (1989) (quoting *United States v. Petrillo,* 332 U.S. 1, 7-8, 67 S. Ct. 1538, 91 L. Ed. 1877 [1947]). "Because of the strong presumption in favor of the constitutional validity of legislation, statutes are not "'automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language."'" *Hearn*, 244 Kan. at 641 (quoting *Parker v. Levy*, 417 U.S. 733, 757, 94 S. Ct. 2547, 41 L. Ed. 2d 439 [1974]).

Applying these principles presents a question of law subject to unlimited review. *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015), *cert. denied* 136 S. Ct. 858 (2016). The test to determine whether a criminal statute is unconstitutionally vague is "(1) whether the statute gives fair warning to those potentially subject to it, and (2) whether it adequately guards against arbitrary and unreasonable enforcement." 302 Kan. at 318; *State v. Gonzalez*, 307 Kan. 575, 580, 412 P.3d 968 (2018). If a statute fails to

26

provide a person of ordinary intelligence with fair notice, then it does not give an adequate warning. *Bollinger*, 302 Kan. at 318. The crux of the inquiry is a commonsense determination of fundamental fairness. 302 Kan. at 318.

This court has yet to apply this test to the "can be inflicted" language in the aggravated battery statute. Several panels of the Court of Appeals have rejected the argument, however. See, e.g., *State v. Brownfield,* No. 115,667, 2017 WL 3668877, at *2-3 (Kan. App. 2017); *petition for rev. filed* September 25, 2017; *State v. Rodriguez*, No. 110,346, 2015 WL 715528, at *1, 12-13 (Kan. App. 2015) (unpublished opinion), *rev'd in part on other grounds* 305 Kan. 1139, 390 P.3d 903 (2017); *State v. Owens*, No. 110,719, 2015 WL 1122998, at *1, 6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. 1018 (2015); *State v. Walker*, No. 107,878, 2013 WL 3970180, at *1, 6-7 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1274 (2014); *State v. Landwehr*, No. 107,273, 2013 WL 2917879, at *1, 4 (Kan. App. 2013) (unpublished opinion), *rev. denied* 298 Kan. 1206 (2013).

In *Brownfield*, a Court of Appeals panel appropriately rejected a defendant's argument that *State v. Cummings*, 297 Kan. 716, 305 P.3d 556 (2013), compelled the panel to conclude the aggravated battery statute is unconstitutionally vague. As the *Brownfield* panel determined, *Cummings* does not compel this conclusion.

*Cummings* involved a constitutional challenge to a jury instruction regarding the elements of the crime of endangering a child—an obviously different crime than aggravated battery. The *Cummings*' analysis focused on the portion of the instruction that informed the jury it needed to determine whether the defendant "'intentionally and unreasonably caused or permitted [a child] to be placed in a situation in which there was a reasonable probability that [the child]'s life, body or health would be injured or endangered.'" 297 Kan. at 722. These words are not part of the aggravated battery

statute. Consequently, the *Brownfield* panel appropriately determined *Cummings* did not aid its analysis, and the panel appropriately relied on other decisions that discuss the wording of the aggravated battery statute.

Also, in *Walker*, a Court of Appeals panel relied on *State v. Chandler*, 252 Kan. 797, Syl. ¶ 4, 850 P.2d 803 (1993), and *State v. Ultreras*, 296 Kan. 828, 852, 295 P.3d 1020 (2013). In those decisions, this court rejected challenges involving the terms "disfigurement" and "great bodily harm" in Kansas' aggravated battery statute. *Walker* held that because the terms "disfigurement," "great bodily harm," and "can be inflicted" "are defined by their plain and ordinary meanings, it inherently follows that the statute has given fair warning to those subject to it and gives sufficient guidance to the trier of fact so as to prevent arbitrary or discriminatory enforcement." 2013 WL 3970180, at *7.

Likewise, in *Owens*, the Court of Appeals found "can be inflicted" was not unconstitutionally vague because "'[t]he elements are simple and certainly within common understanding and practice. The terms of the [aggravated battery] statute are not so vague that persons of common intelligence must necessarily guess at their meaning and differ as to their application.'" 2015 WL 1122998, at *6 (quoting *State v. Kleber*, 2 Kan. App. 2d 115, 119, 575 P.2d 900 [1978]). Similarly, in *Rodriguez*, the Court of Appeals held "disfigurement" and "can be inflicted" are not unconstitutionally vague because they are simple elements which are questions of fact for the jury to consider in the ordinary sense. 2015 WL 715528, at *12-13; see *Landwehr*, 2013 WL 2917879, at *3-4 (holding that the ordinary sense of these terms provides fair warning and is not susceptible to arbitrary enforcement because jurors use their common knowledge and experience).

We agree with the Court of Appeals' reasoning in these cases and find that reasoning consistent with our decisions in *Ultreras*, 296 Kan. at 851, and *Chandler*,

28

252 Kan. 797, Syl. ¶ 4. Individuals of ordinary intelligence can understand what is meant by "can be inflicted." Thus, the statute gives adequate notice. And the phrase gives sufficient guidance to prevent arbitrary or discriminatory enforcement by prosecutors, courts, and juries. K.S.A. 2011 Supp. 21-5413(b)(1)(B) is not unconstitutionally vague.

6.      *No cumulative error*

Finally, Williams argues cumulative error deprived him of a fair trial.

"In a cumulative error analysis, an appellate court aggregates all errors and, even though those errors would individually be considered harmless, analyzes whether their cumulative effect on the outcome of the trial is such that collectively they cannot be determined to be harmless. See *State v. Colston*, 290 Kan. 952, 978-79, 235 P.3d 1234 (2010). In other words, was the defendant's right to a fair trial violated because the combined errors affected the outcome of the trial? In a cumulative error analysis, '[i]f any of the errors being aggregated are constitutional in nature, the cumulative error must be harmless beyond a reasonable doubt.' *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002).

"In making the assessment of whether the cumulative errors are harmless error, an appellate court examines the errors in the context of the record as a whole considering how the district court dealt with the errors as they arose (including the efficacy, or lack of efficacy, of any remedial efforts); the nature and number of errors committed and their interrelationship, if any; and the strength of the evidence." *State v. Tully*, 293 Kan. 176, 205-06, 262 P.3d 314 (2011).

Williams has shown error in failing to give two lesser included offense instructions. As we have discussed, neither rises to the level of clear error. And because neither presents a constitutional issue, we apply the harmless error reversibility standard of K.S.A. 2017 Supp. 60-261—reversal is required when there is a reasonable probability

that the cumulative errors affected the verdict. *Tully*, 293 Kan. at 207. Here, the two errors, while both relating to lesser included offense instructions, do not overlap and would not have a cumulative effect on the jury's consideration of the evidence or issues related to each charge. Given the nature and relationship of the errors, the context in which they occurred, and the overall strength of the evidence, we hold that Williams was not prejudiced by cumulative error.

Affirmed.

\* \* \*

ROSEN, J., concurring: I agree with the majority's conclusions affirming Williams' convictions. However, I disagree with the majority opinion which finds error by concluding that the district judge was required to instruct the jury on the lesser included offenses of misdemeanor assault and misdemeanor battery. As I have stated in numerous dissents and concurring decisions opining on this issue, K.S.A. 22-3414(3) provides "where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge shall instruct the jury as to the crime charged and any such lesser included crime." See *State v. McLinn*, 307 Kan. 307, 350-51, 409 P.3d l (2018); *State v. Fisher,* 304 Kan. 242, 265-66, 373 P.3d 781 (2016*)*; *State v. Qualls*, 297 Kan. 61, 73-75, 298 P.3d 311 (2013); *State v. Haberlein*, 296 Kan. 195, 213-14, 290 P.3d 640 (2012); *State v. Tahah*, 293 Kan. 267, 280-84, 262 P.3d 1045 (2011); and *State v. Scaife*, 286 Kan. 614, 627-31, 186 P.3d 755 (2008).

The majority continues to rely on a theoretical sufficiency test set forth in *State v. Haberlein*, 296 Kan. 195, 204, 290 P.3d 640 (2012), in determining whether a lesser included offense instruction is mandated: "Thus, at least in theory, the jury could have chosen to convict Haberlein of second-degree intentional murder without having its

30

verdict subject to reversal for insufficient evidence. This means the instruction was factually supported." Applying such a test renders not only K.S.A. 2017 Supp. 22-3414(3) meaningless but also any factual propriety analysis we require the district court to undertake. A lessor included offense conviction always meets a sufficiency standard of a conviction of the greater offense. As I have previously opined, the test set forth in K.S.A. 2017 Supp. 22-3414(3) is not a theoretical one. Instead, it requires the trial judge, who has heard the testimony and viewed the evidence in the case, to determine whether there is "some evidence which would *reasonably justify a conviction*" of the lesser included crime. K.S.A. 2017 Supp. 22-3414(3) (Emphasis added.) If our test is to find in "theory" whether the facts support a lesser included crime, any scenario limited only by one's imagination would suffice in making the determination on whether to instruct. Here, apparently no one, including the prosecutor, defense counsel, and the trial judge who heard the testimony and scrutinized the evidence of strangulation, head butting, and Williams' holding of a baseball bat above his head in a threatening manner believed lesser included instructions were warranted. Moreover, as Justice Johnson astutely points out in his concurring opinion, "In addition to common knowledge and experience, a reasonable jury would infer that, to be an instrument of protection, the baseball bat had to be calculated or likely to produce death or serious injury. That aspect of the case was not a close call." Slip op. at 32.

I would simply find on this record and, consistent with my aforementioned concurring and dissenting opinions relating to this issue, the trial court did not err in not instructing the jury on the lesser included offenses of misdemeanor battery and misdemeanor assault.

NUSS, C.J., and STEGALL, J., join the foregoing concurrence.

31

* * *

JOHNSON, J., concurring: I would hold that the aggravated assault elements instruction was erroneous in stating, "[T]he defendant used a deadly weapon, a baseball bat." The majority opines that a jury would know to drill down into, and harmonize, the whole packet of instructions, including the elements instruction's definition of deadly weapon, to discern that the elements instruction really meant to say, "The defendant used a deadly weapon, alleged to be a baseball bat in this case." But I submit that it is just as likely, if not more likely, that a conscientious jury would reasonably conclude that it must find Williams guilty because the essential deadly-weapon element of the crime would be satisfied by the State simply proving Williams had possession of a baseball bat. Cf. *State v. Sisson*, 302 Kan. 123, 133, 351 P.3d 1235 (2015) (Biles, J., concurring). Jurors already have a Herculean task without having to perform linguistic acrobatics to discern that an instruction does not actually mean what it plainly says.

Nevertheless, I can concur in the result. Even if the jury had been clearly told to perform the analytical step of finding that the baseball bat met the definition of a deadly weapon, the result would have been the same. As the majority recites, the victim kept the baseball bat by her front door for protection. In addition to common knowledge and experience, a reasonable jury would infer that, to be an instrument of protection, the baseball bat had to be calculated or likely to produce death or serious injury. That aspect of the case was not a close call.

BEIER, J., joins the foregoing concurrence.