NOT DESIGNATED FOR PUBLICATION

No. 127,554

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN ROY SINCLAIR,
*Appellant.*

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Submitted without oral argument. Opinion filed June 12, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ATCHESON and CLINE, JJ.

PER CURIAM: A McPherson County District Court jury convicted John Roy Sinclair of one count of aggravated criminal sodomy and three counts of aggravated indecent liberties with a child for sexual abuse he directed at M.M., his stepdaughter. The jury found him not guilty of three counts of aggravated criminal sodomy. The district court imposed consecutive Jessica's Law sentences on two of the convictions, so Sinclair must serve a life term of imprisonment without parole consideration for 50 years. On appeal, he challenges three aspects of the jury trial. We find no error and affirm the convictions and the resulting sentences.

1

In February 2022, when M.M. was about 9 years old, she told her mother that Sinclair had anally penetrated her with his penis. Mother took M.M. to an urgent care clinic, and the McPherson police were contacted and began an investigation. As part of the investigation, a forensic interviewer spoke with M.M. The interview was videotaped and played for the jury during the trial. The interviewer described her interactions with M.M. as "challenging." M.M. often did not communicate verbally and instead nodded her head in agreement with some questions or statements the interviewer posed about the nature of her physical contact with Sinclair. M.M. told the interviewer the abuse began when she was six or seven years old. M.M. indicated two abusive contacts occurred the first day; in each incident, M.M. indicated Sinclair vaginally penetrated her with his fingers and put his penis between her buttocks. M.M. indicated a third incident of a similar nature happened at an indefinite time. Finally, M.M. indicated Sinclair had put his penis between her buttocks a few weeks earlier. When the interviewer asked M.M. if anything came out of Sinclair's penis, she said something "white" did.

During the investigation, law enforcement officers did not search the family residence or collect any forensic evidence. In a video interview, Sinclair made no incriminating statements to investigators and denied any wrongdoing. The video was played for the jury, and Sinclair did not testify at trial.

The case went to trial in September 2023. M.M. testified at trial and for the most part said she did not remember what Sinclair had done. M.M. testified she did tell her mother that Sinclair had touched her inappropriately and identified the room where the most recent incident occurred. She testified to other circumstances such as where she lived and who lived with her and the various residences they occupied in McPherson. She identified Sinclair in court and referred to him as her stepdad. M.M. agreed she told the forensic interviewer the truth. But M.M. disclaimed detailed recollections of the physical

contact with Sinclair. M.M. testified that Sinclair touched her with his hand, but she did not recall him touching her with anything else. She testified that Sinclair told her not to tell anyone about what happened. The State offered and the district court admitted the forensic interview of M.M. The jury returned split verdicts, as we have outlined.

Each conviction was a Jessica's Law crime under K.S.A. 21-6627(a)(1), mandating a life sentence with first parole eligibility after serving 25 years. At a hearing in January 2024, the district court imposed consecutive sentences on two of the aggravated indecent liberties convictions, meaning Sinclair would have to serve 50 years before seeking conditional release from prison. Sinclair has appealed.

LEGAL ANALYSIS

On appeal, Sinclair contends the district court erred in: (1) admitting the videotape of M.M.'s forensic interview; (2) allowing speculative testimony regarding what young children may know about certain aspects of sexual activity; and (3) instructing the jurors on the required culpable mental state to convict for aggravated indecent liberties with a child. We address those points in order, augmenting as necessary our initial case history.

*Admission of Forensic Interview*

For his first issue on appeal, Sinclair contends the district court erred in admitting the forensic interview of M.M. as substantive evidence against him and that without the interview there was insufficient evidence to convict based on M.M.'s trial testimony. In setting up the issue, Sinclair manufactures a rule that a witness' out-of-court statements may be admitted as substantive evidence only if the witness testifies in a way that is "affirmative, contradictory, and damaging" to the party calling them, here, the State. The caselaw Sinclair relies on does not support that evidentiary proposition, so the argument collapses because its foundational premise is wrong.

3

Sinclair looks primarily to *State v. Hobson*, 234 Kan. 133, 147, 671 P.2d 1365 (1983), and *State v. Lomax*, 227 Kan. 651, 608 P.2d 959 (1980). In *Hobson*, the court considered when a witness may be declared hostile, thereby permitting the party calling the witness to use leading questions on direct examination, and when the witness' inconsistent out-of-court statements may be offered to impeach their credibility. 234 Kan. at 146-47. In making that determination, the district court should consider whether the testimony was "affirmative, contradictory and very damaging to the State's case." 234 Kan. at 147. If so, the witness may be considered hostile—allowing leading questions on direct examination and introduction of impeaching out-of-court statements under K.S.A. 60-422. 234 Kan. at 148.

But the admission of a witness' out-of-court statements as substantive evidence rests on a different evidentiary footing and does not depend upon a finding of hostility. Typically, out-of-court statements would be excluded as inadmissible hearsay under K.S.A. 60-460. The hearsay rule recognizes an exception when the declarant testifies at the hearing—the declarant's out-of-court statements are no longer inadmissible hearsay. K.S.A. 60-460(a). The out-of-court statements, of course, still must be relevant and otherwise admissible. The K.S.A. 60-460(a) exception applies to any witness, hostile or not.

The "affirmative, contradictory and very damaging" language in *Hobson* echoes a standard from *State v. Potts*, 205 Kan. 47, 51-52, 468 P.2d 78 (1970), and discussed in *Lomax*, 227 Kan. at 659-60, for when a witness' credibility may be impeached with their out-of-court statements. Again, that's an evidentiary use of those statements different from their admission as substantive evidence consistent with the hearsay exception in K.S.A. 60-460(a).

And *Lomax* does not support the purported evidentiary rule Sinclair offers us. In that case, a witness to the criminal conduct charged against John Lomax and Danny

4

Williams disclaimed any memory of the incident when called at trial, although she had reluctantly testified to the events in a preliminary hearing for a third defendant. On review, the court considered the loss of memory feigned rather than a good-faith inability to recall and determined the witness was effectively unavailable because of her subterfuge. *Lomax*, 227 Kan. at 661-62. In turn, the district court erred in admitting her preliminary hearing testimony because neither Lomax nor Williams was present at that proceeding and, therefore, had no opportunity to confront the witness as required under the Sixth Amendment to the United States Constitution. 227 Kan. at 661-62. The issue in *Lomax* did not turn on the witness being hostile but on her being available at all in a legal sense. The court noted that had the witness been available and subject to cross-examination, her out-of-court statements would have come within the hearsay exception in K.S.A. 60-460(a) and could have been presented to the jury if they were otherwise admissible. 227 Kan. at 658.

Here, M.M. plainly was available and subject to cross-examination. In *State v. Stafford*, 296 Kan. 25, 49-50, 290 P.3d 562 (2012), the court recognized that a witness who remembers some things but not others is available—unlike the witness in *Lomax* who categorically (and falsely) disclaimed any memory of the criminal episode.

In short, there is no evidentiary rule requiring a witness give testimony that is "affirmative, contradictory and very damaging" before their out-of-court statements may be admitted as substantive evidence consistent with K.S.A. 60-460(a), assuming they are relevant and not barred for some reason apart from their hearsay character. The district court, therefore, properly admitted M.M.'s forensic interview, and the jurors properly considered the factual recitations in that interview in reaching their verdicts.

*Admission of Purportedly Speculative Testimony*

For his second point on appeal, Sinclair contends a counselor at M.M.'s elementary school who does lessons on "good-touch, bad-touch" sexual abuse was allowed to give impermissibly speculative testimony at trial. Some additional context is required. The counselor had done the good-touch, bad-touch lessons for more than 10 years and had given a presentation to a group that included M.M. several weeks before M.M. spoke to her mother about Sinclair touching her inappropriately. In response to a question from the prosecutor, the counselor agreed that it would be "strange" for a third-grader to bring up what fluids might come out of an adult male's penis. The inquiry unfolded this way:

"Q. In your discussions did you talk with the kids in very explicit terms?

"A. No.

"Q. Did you talk about bodily functions?

"A. No.

"Q. Did you ever have a discussion about what would come out of a man's penis?

"A. No.

"Q. Would that be a strange thing for a third grade child to bring up?

"[Defense Counsel]: I'd object. Calls for speculation.

"The Court: Overruled.

"A. Can you repeat that? I'm sorry.

"Q. Would that be a strange thing for a child in third grade to—

"A. Yes, that would be very strange.

"[The State]: Nothing else, Your Honor.

"The Court: Any further questions, [Defense Counsel]?

"[Defense Counsel]: It would be strange. Would it be unheard of?

"[The State]: Objection, Judge. I think that calls for speculation.

"The Court: Overruled.

"A. In my 13 years—18 years in the school I have never heard of a student, regardless of age, say anything of that matter."

The full context shows that the counselor was not offering some expert opinion or broad generalization, i.e., speculation about what third-graders may or may not know about a particular sexual topic. Rather, she was relating her own experience in presenting good-touch, bad-touch programs for an extended time to many elementary school students. The testimony was not, in that sense, speculative. "Strange" may not have been the best description of what the counselor intended to convey. It might have been better to have simply asked had a child ever brought up male ejaculation during any of these programs. Or to ask if that would have been "unusual."

The exchange appears to fit within the realm of proper lay opinion testimony under K.S.A. 60-456(a). A district court may allow nonexpert testimony in the form of an opinion if it is based on the witness' perception and is "helpful" to a clear understanding of their testimony. See *State v. Willis*, 312 Kan. 127, 138-40, 475 P.3d 324 (2020); *State v. Hinchsliff*, No. 103,608, 2011 WL 4031502, at *8 (Kan. App. 2011) (unpublished opinion). The counselor's characterization that it would have been strange or unusual for a third-grader to bring up male ejaculation during a good-touch, bad-touch lesson reflects nonexpert opinion summarizing her perception of the presentations she had made. The district court properly overruled Sinclair's trial objection based on speculation.

*Jury Instruction on Aggravated Indecent Liberties with a Child*

For his final point, Sinclair contends the district court instructed the jurors on the wrong form of the intentional culpable mental state required to prove aggravated indecent liberties with a child under K.S.A. 21-5506(b)(3)(A). To convict, the State had to prove

that Sinclair lewdly fondled or touched M.M. "with the intent to arouse or to satisfy the sexual desires" of either of them. K.S.A. 21-5506(b)(3)(A). The phrase "with the intent" signals an intentional culpable mental state entailing the defendant's "conscious objective or desire to engage in the [prohibited] conduct or cause the [prohibited] result." K.S.A. 21-5202(h). The district court instructed the jurors both that the State had to prove Sinclair "intentionally engaged" in lewdly fondling or touching of M.M. to gratify the sexual desires of either of them and that a "defendant acts intentionally when it is the defendant's conscious objective or desire to do the act complained about by the State."

Sinclair contends the jurors would have construed the phrase "the act" to refer to the alleged physical contact between him and M.M. divorced from the intent for sexual gratification, so they could have convicted him without finding each element of the crime proved beyond a reasonable doubt. But the argument reads the phrase "the act" too narrowly. The act refers to the crime charged. Here, that entails both impermissible touching and the requisite intent for sexual gratification. In short, the instruction correctly stated the law.

Sinclair has lodged his objection to the jury instruction for the first time on appeal. We review claimed instructional errors through a set of sequential considerations looking at preservation of the claimed error, the legal and factual appropriateness of the instruction, and prejudice to the defendant as the objecting party. *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018). Because Sinclair did not raise his challenge in the district court, we would review for clear error if the instruction were improper.

Another panel of this court recently considered and rejected this precise argument in *State v. Bordelon*, No. 126,867, 2025 WL 2553693, at *2-4 (Kan. App. 2025) (unpublished opinion). In that case, the district court used the same definition of "intentionally" in describing the elements required to convict for an aggravated sexual battery committed in 2014. Those elements included prohibited touching with the intent

8

to arouse or satisfy a sexual desire. See K.S.A. 2014 Supp. 21-5505(b)(1). On appeal, Bordelon argued that the phrase "the act" in the explanatory definition of intentionally would have prompted the jury to conclude it could (and should) convict if it found Bordelon touched the victim even absent the requisite intent. According to Bordelon, finding touching alone would have been enough for the jury to return a guilty verdict. Sinclair makes a legally identical argument to us. We find the reasoning in *Bordelon* persuasive and borrow freely from that opinion in rejecting Sinclair's contention.

We assess jury instructions by attributing common or everyday meanings to the words, unless they include specialized definitions—the same way the jurors would read them. See *State v. McLinn*, 307 Kan. 307, 343, 409 P.3d 1 (2018) (jurors expected to "apply a common understanding of the words" used in jury instructions); *State v. Armstrong*, 299 Kan. 405, 439-40, 324 P.3d 1052 (2014). So "the act" refers to the criminal act, i.e., the criminal conduct, alleged against the defendant. On these charges, that would be Sinclair's proscribed touching of M.M. for the particular purpose of sexual gratification. And, consistent with the instruction, that is the act or conduct the State has "complained about"—not simply that Sinclair touched M.M. in a lewd or lascivious manner. As the *Bordelon* panel observed: The "argument rests on a linguistic magic trick that tries to make the plain meaning of the instructions say something that it does not." 2025 WL 2553693, at *3.

As outlined in *Bordelon* and as suggested by the State here, our conclusion parallels the Kansas Supreme Court's reasoning in *State v. Seba*, 305 Kan. 185, 207, 380 P.3d 209 (2016), a closely analogous case. *Bordelon*, 2025 WL 2553693, at *4. The *Seba* court found the same language Sinclair challenges here—referring to "the act complained about" in explaining an intentional culpable mental state—to be acceptable. 305 Kan. at 207. In *Seba*, the first-degree murder instruction identified the challenged element as "intentionally killed," thereby making clear what "act" had to be committed intentionally. 305 Kan. at 206. The instructions here similarly linked "touching" directly with "the

9

intent to arouse or satisfy . . . sexual desires" as one of the required elements to convict. Linguistically, the element described conduct consisting of touching undertaken with a particular proscribed purpose or intent. So the instruction defining intentionally was legally sufficient.

The instruction might have been improved if it had substituted "conduct" for "act" in the explanatory sentence, mirroring the statutory language used to define the culpable mental state in K.S.A. 21-5202(h), or if it had elaborated on the act as being touching for purposes of sexual gratification. But jury instructions are not erroneous merely because better ones could be crafted. See *State v. Ervin*, 320 Kan. 287, Syl. ¶ 4, 566 P.3d 481 (2025); *State v. Clark*, No. 117,951, 2019 WL 3210263, at *4 (Kan. App. 2019) (unpublished opinion). In short, the instruction was not erroneous. And Sinclair's argument falters for that reason.

Affirmed.